**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA and THE STATE OF TEXAS, *ex rel.* THOMAS HEADEN III, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. H-18-773 |
| ABUNDANT LIFE THERAPEUTIC SERVICES TEXAS, LLC and JOHN DOES (1–50) INCLUSIVE, | § § § § § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

*Qui tam* relator Thomas Headen sued Abundant Life Therapeutic Services Texas, LLC, a medical-services provider, and unidentified defendants, alleging violations of the False Claims Act, 31 U.S.C. § 3729, the Anti-Kickback Statute, 42 U.S.C. § 1320a–7b, and the Texas Medicaid Fraud Prevention Act, TEX. HUM. RES. CODE § 36.002. (Docket Entry No. 1). The amended complaint accuses Abundant Life of paying kickbacks to organizations and individuals to generate patient referrals, submitting fraudulent claims for nonessential services to the federal government, improperly employing physicians, and providing illegal benefits to physicians. (Docket Entry No. 12 at ¶¶ 5, 13–20). Abundant Life moved to dismiss the amended complaint under Federal Rules of Civil Procedure 9(b) and 12(b)(6), Headen responded, and Abundant Life replied. (Docket Entry Nos. 14, 16, 17).

1

Based on a review of the pleadings, the parties' briefs, the record, and the applicable law, the court grants the motion and dismisses the amended complaint, without prejudice and with leave to amend. Headen must file an amended pleading no later than **January 25, 2019**.

The reasons are set out in detail below.

I. **Background**

The amended complaint alleges the following facts, taken as true for the purposes of this motion. Headen worked for Abundant Life as a consultant from April 2017 to February 20, 2018, and as an employee from February 12 to February 28, 2018. (Docket Entry No. 12 at ¶ 5). In January 2018, the manager and director of Abundant Life, Jon Nathaniel Ford, told Headen about criminal schemes the company was engaging in to remain profitable. (*Id.* at ¶¶ 5, 16–19). Ford told Headen that Abundant Life, through a nonprofit entity called Assistance and Mentorship to Purpose Project, paid kickbacks to Blackshear Elementary, the Madge Bush Living Center, Rhodes Charter Elementary School, Houston Independent School District, and to Harmony Schools. (*Id.* at ¶¶ 16–17). Ford was the Purpose Project director and its registered agent. (*Id.* at ¶ 16). Ford told Headen that he paid the Purpose Project "at least $42,000 in checks" to fund Abundant Life's schemes. (*Id.*).

Ford explained to Headen that in July and August 2017, the Purpose Project donated $1,216.52 in school uniforms and $2,271.26 in educational materials to Blackshear Elementary. (*Id.* at ¶ 16). In October 2017, Abundant Life received referrals for a patient from Rhodes Charter Elementary after Eryca Neville, a Purpose Project employee, gave gifts to the school. (*Id.* at ¶ 17). Ford claimed that the donations were illegal and that they generated $574,000 in revenue for Abundant Life. (*Id.* at ¶ 16).

Ford told Headen about contracts between Abundant Life and the Houston Independent School District and the Harmony Schools that "included an offer [for Abundant Life] to provide free skill building services" in exchange for patient referrals. (*Id.* at ¶ 17). The contracts would have services would be "billed to Texas Medicaid." As to the alleged Houston Independent School District contract, Ford reported that there were signature fields for Chief Financial Officer Rene Barajas, Controller Sherrie Robinson, and the District's general counsel. (*Id.*). As a result of the contracts, student-patients C.M., J.D., and D.P. were referred to Abundant Life from October to December 2017. (*Id.*). Ford told Headen that he directed an employee of his billing company, Blackwise LLC, to submit claims to Medicaid for those patients. (*Id.*).

Ford also told Headen that Abundant Life retained independent contractors as marketing agents to generate referrals for Medicare and Medicaid. (*Id.* at ¶ 5). Abundant Life compensated these agents for "signing up schools and organizations for 'free skills building' in exchange for child referrals." (*Id.*). The schemes "resulted in thousands of hours of billing," some reimbursed by Medicaid. (*Id.* at ¶ 16). As a result of the criminal activity, Abundant Life's monthly revenue increased from $230,000 to $800,000. (*Id.* at ¶ 17).

Headen learned from Ford that Abundant Life had also retained independent contractors to perform nonessential transportation services. (*Id.* at ¶ 18). These contractors drove patients to their homes, schools, and appointments, and they billed the federal government at their discretion for the patient trips. According to Ford, the discretionary billing practices violated Medicare regulations requiring medical providers to contract with the referring entities before furnishing transportation services, and violated the regulatory requirement that the services be medically necessary. (*Id.*).

Headen learned from Ford that Abundant Life hired physicians and provided other doctors with benefits in violation of Texas law. (*Id.* at ¶ 19). Abundant Life used its employee-physicians' licenses "to apply for approval and to accept payments from Medicaid and Medicare." (*Id.*). As a result of those improper employer-employee relationships, Abundant Life engaged in the unauthorized practice of corporate medicine. (*Id.* at ¶ 14). Abundant Life also gave bonuses and free office space to doctors in exchange for their services that facilitated Abundant Life's false Medicare and Medicaid bills, causing "thousands of hours' worth of false claims to the United States." (*Id.* at ¶ 19).

In March 2018, Headen filed this *qui tam* action under seal. After the United States and the State of Texas declined to intervene in May 2018, the court unsealed the complaint and related filings. (Docket Entry Nos. 6, 7). In August 2018, Abundant Life moved to dismiss Headen's complaint under Rules 9(b) and 12(b)(6). (Docket Entry No. 10). That motion became moot after Headen filed an amended complaint. (Docket Entry Nos. 12, 13). In October 2018, Abundant Life filed this motion to dismiss the operative amended complaint under Rules 9(b) and 12(b)(6). (Docket Entry No. 14).

## II.     The Legal Standards

### A.     Rule 12(b)(6)

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED.R.CIV.P. 12(b)(6). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfullyharmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*,

550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556).

"To withstand a Rule 12(b)(6) motion, [a] complaint must allege 'more than labels and conclusions,'" and "a formulaic recitation of the elements of a cause of action will not do." *Norris v. Hearst Tr.*, 500 F.3d 454, 464 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557). "[A] complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id*. (quotation and alteration omitted) (quoting *Twombly*, 550 U.S. at 558).

When a complaint fails to state a claim, the court should generally give the plaintiff a chance to amend under Rule 15(a) before dismissing the action with prejudice, unless it is clear that to do so would be futile. *See Carroll v. Fort James Corp.*, 470 F.3d 1171, 1175 (5th Cir. 2006) (Rule 15(a) "evinces a bias in favor of granting leave to amend"); *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at

least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."). A court in its discretion may deny a motion to amend for futility if the amended complaint would fail to state a claim on which relief could be granted. *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016). The decision to grant or deny leave to amend "is entrusted to the sound discretion of the district court." *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 232 (5th Cir. 2012).

### B.    Rule 9(b)

"[A] complaint filed under the False Claims Act must meet the heightened pleading standard of Rule 9(b)." *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009). Relators "must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). That standard requires pleadings to set forth the "who, what, when, where, and how of the alleged fraud." *United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 266 (5th Cir. 2010) (quotation omitted). The Fifth Circuit has established "a workable construction of Rule 9(b) with complaints under the False Claims Act." *Grubbs*, 565 F.3d at 190 (Rule 9(b) "is context specific and flexible and must remain so to achieve the remedial purpose of the False Claims Act."). A relator's complaint may survive a motion to dismiss by alleging either "the details of an actually submitted false claim" or "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Id.*

### C.    The False Claims Act and the Anti-Kickback Statute

Enacted during the Civil War to curb widespread fraud, the False Claims Act "is intended to protect the Treasury against the hungry and unscrupulous host that encompasses it on every side."

*United States ex rel. Parikh v. Citizens Med. Ctr.*, 977 F. Supp. 2d 654, 662 (S.D. Tex. 2013) (quotation omitted). "To aid the rooting out of fraud, the Act provides for civil suits brought by both the Attorney General and by private persons, termed relators." *Grubbs*, 565 F.3d at 184. "[R]elators share in the government's winnings, receiving a bounty of up to thirty percent of the government's proceeds." *United States ex rel. Ruscher v. Omnicare, Inc.*, No. 4:08-CV-3396, 2014 WL 2618158, at *2 (S.D. Tex. June 12, 2014).

Through actions by the government or by relators in a *qui tam* capacity, a person is liable under the False Claims Act if he: "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval"; "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim"; [or] "conspires to commit a violation of [the False Claims Act]." 31 U.S.C. § 3729(a)(1)(A)–(C). "Knowingly" means a person who: "has actual knowledge of the information"; "acts in deliberate ignorance of the truth or falsity of the information"; or "acts in reckless disregard to the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A)(i)–(iii). Specific intent to defraud is not required to establish knowledge. 31 U.S.C. § 3729(b)(1)(B). "Material" means "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4).

Many actions under the False Claims Act allege common fraud—"those in which the claimant did not perform the service he requests compensation for or did perform the service but overcharged the government." *Parikh*, 977 F. Supp. 2d at 662. But the Act also imposes liability on parties who submit "claims that are [not] false on their face." *Id.* "Under some circumstances, accurate claims submitted for services actually rendered may still be considered fraudulent and give rise to . . . liability if the services were rendered in violation of other laws." *Id.*

In the Medicare and Medicaid contexts, the government conditions compensation on compliance with certain laws, including the Anti-Kickback Statute. *Id.* The Statute proscribes "knowingly and willfully offer[ing] or pay[ing] any remuneration . . . to any person to induce such person . . . to refer an individual to a person for the furnishing . . . of any item or service." 42 U.S.C. § 1320a–7b. A claimant seeking compensation for Medicaid and Medicare services in violation of the Statute is liable under the False Claims Act, 31 U.S.C. § 3729(a)(1)(A), even if the claimant did not expressly certify their compliance with the Statute. *See United States ex rel. Colquitt v. Abbott Lab.*, 858 F.3d 365, 371 (5th Cir. 2017); *see also United States ex rel. Patel v. Catholic Health Initiatives*, 312 F. Supp. 3d 584, 594 (S.D. Tex. 2018); *United States ex rel. Capshaw v. White & Kumar*, No. 3:12-CV-4457-N, 2018 WL 6068806, at *2 (N.D. Tex. Nov. 20, 2018); *Health Choice All., LLC, on behalf of the United States v. Eli Lilly & Co., Inc.*, No. 5:17-CV-123-RWS-CMC, 2018 WL 4026986, at *16 (E.D. Tex. July 25, 2018).

## III. Analysis

Headen accuses Abundant Life of three types of unlawful conduct: illegal kickbacks to marketing agents, organizations, and physicians, (*Id.* at ¶¶ 5, 13, 16–17, 19–20); fraudulent claims for nonessential transportation services, (*Id.* at ¶ 18); and improper employment of physicians and the wrongful provision of benefits to other physicians, (*Id.* at ¶¶ 14, 19). The amended complaint has five counts, three alleging violations of the False Claims Act (Counts I–III), one alleging violations of the Anti-Kickback Statute (Count IV), and one alleging violations of the Texas Medicaid Fraud Prevention Act (Count V). (Docket Entry No. 12 at ¶¶ 21–43). Because Headen concedes that the Anti-Kickback Statute does not give rise to an individual cause of action, (Docket

Entry No. 16 at 2, 12), Count IV is dismissed, with prejudice and without leave to amend because it would be futile.  The court reviews Counts I to III and V.

### A.    The False Claims Act Allegations

#### 1.    Headen's Presentment Claim Under 31 U.S.C. § 3729(a)(1)(A)

In Count I, the amended complaint alleges that Abundant Life violated 31 U.S.C. § 3729(a)(1)(A) by running unlawful kickback schemes.  (Docket Entry No. 12 at ¶ 21–27).  Headen asserts that Abundant Life provided services, donations, and gifts to organizations and individuals in exchange for patient referrals, and then submitted claims for reimbursement that were conditioned on compliance with the Anti-Kickback Statute.  Abundant Life argues that the amended complaint fails to state a claim because the allegations are conclusory and do not satisfy Rule 9(b).  (Docket Entry No. 14 at 6).  Abundant Life contends that the complaint does not identify specific false claims that it submitted, or "allege particular details of a purported scheme to submit false claims paired with reliable indicia that lead to a strong inference that false claims were actually submitted to the [g]overnment."  (*Id.*).

Headen responds that the amended complaint "clearly point[s] out that the owner of [Abundant Life] paid contractors commissions for generating referral[s] by offering . . . services in exchange for mental health and counseling services that were subsequently reimbursed by federal healthcare programs."  (Docket Entry No. 16 at 6).  Headen argues that the complaint includes enough factual information about the schemes to satisfy Rule 9(b), including Abundant Life's employee involvement, which government program was billed, approximate dates of the transactions and events, and patient information.  (*Id.* at 7).

Abundant Life is liable under § 3729(a)(1)(A) only if it "knowingly present[ed] a false or fraudulent claim." Headen's claim "requires, at a minimum, . . . the who, what, when, where, and how of the alleged fraud." *Colquitt*, 858 F.3d at 371 (quotation omitted). "The elements of the [Anti-Kickback Statute] violation must also be pleaded with particularity under Rule 9(b) because they are brought as a [claim under the False Claims Act]." *See United States ex rel. Nunnally v. W. Calcasieu Cameron Hosp.*, 519 F. App'x 890, 894 (5th Cir. 2013). But "[a]s a matter of pleading standards," the Fifth Circuit has "establishe[d] that [r]elators need not identify particular claims resulting from [an alleged] kickback scheme." *Parikh*, 977 F. Supp. 2d at 665 (citing *Grubbs*, 565 F.3d at 190). The amended complaint must plead facts that could show: (1) that Abundant Life "made kickbacks with the intent of inducing referrals," *id.*; (2) the "particular details of [the] scheme"; and (3) "reliable indicia that lead to a strong inference that claims were actually submitted," *Colquitt*, 858 F.3d at 372.

Under the first prong, "all that [the amended complaint] must do is plead that [Abundant Life] acted with the intent to induce referral of health care program business." *Ruscher*, 2014 WL 2618158, at *12 (quotation omitted). The second prong requires factual allegations that "sketch how it was that [Abundant Life] provided remuneration to [the kickback recipients], the form of that remuneration, how and why [Abundant Life] believed that remuneration would induce new business, and how [Abundant Life] benefitted from the remuneration." *Id.* at *10. The complaint must also "allege the timeframe in which the scheme took place and which components of [Abundant Life] were involved, even if [Headen] cannot allege that exact dates on which kickbacks were provided and the names of each individual within [Abundant Life] who authorized a kickback." *Id.* While the third prong involves a fact-specific analysis, courts use "a common sense approach" to determine

whether the complaint's factual allegations support a strong inference that false claims were submitted to the government. *Id.*

In *Colquitt*, 858 F.3d at 369, a medical-device salesman filed a *qui tam* suit against two companies, asserting False Claims Act causes of action "predicated on false certification of compliance with the Anti-Kickback Statute." *Id.* The relator alleged that the two companies sought Food and Drug Administration approval for the medical device's use in specific procedures, and then were "encouraging and bribing providers to use them in [other procedures] for which the providers billed Medicare." *Id.* at 370. The Fifth Circuit held that the complaint's factual allegations could support a strong inference that false claims were submitted to the government, because "[n]early every hospital in America participates in Medicare and would most likely have billed Medicare had they performed procedures using [the device] on a person over age 65." *Id.* at 372. Even so, the circuit affirmed the district court's dismissal because the complaint failed to "allege the details of the scheme with sufficient particularity." *Id.* The complaint "devote[d] a single, vague paragraph to the alleged kickback scheme," without specific allegations about the kickbacks, and alleged "[n]o particulars . . . to show that the unidentified doctors who received the ill-defined benefits caused the hospital to use [the device]." *Id.* As a result, "the complaint never link[ed] the alleged carrots to the purchase and use of the [devices]." *Id.*

In *Nunnally*, 519 F. App'x at 895, the Fifth Circuit also affirmed the dismissal of a complaint alleging violations of the Anti-Kickback Statute and False Claims Act. The *Nunnally* complaint failed to state a claim because it "merely offer[ed] sweeping and conclusory allegations of 'verbal agreements' between [a hospital] and 'various physicians,'" and did not provide "information on the contents of those agreements, the identity of any physicians, actual inducements, or improper

referrals." *Id.* at 894. The only detail was "an 'example' of an agreement to charge physicians $3.60 for a blood test, while later charging Medicare $10.60 for the same test." The court found that the example was "insufficient because it d[id] not allege, nor reliably indicate, that the two different pay scales constitute[d] 'remuneration' to the physicians," or "even indicate that these amounts are real rather than hypothetical." *Id.*

By comparison, in *Parikh*, 977 F. Supp. 2d at 666–68, the district court held that the relators' complaint stated a claim for relief under the False Claims Act and the Anti-Kickback Statute. The relators alleged a kickback scheme involving many individuals and entities. According to the complaint, emergency-room physicians, "including twelve doctors identified by name, received illegal bonuses for referring . . . patients to the hospital's Chest Pain Center." *Id.* at 666. The complaint alleged that the defendants took part because the Chest Pain Center's patient tests generated significant revenue. *Id.* The complaint alleged that the "physicians as a group received over $647,000 in illegal bonuses between September 2008 and March 2010, with four doctors identified by name." *Id.* at 667. The complaint detailed the identified physicians' bonus totals during August 2010. *Id.* It also alleged that the defendants created shell companies to conceal the payments. *Id.* In addition, the complaint—"[i]n exacting detail comprising eleven pages"—included "28 examples of specific Medicare or Medicaid patients that the [emergency-room] physicians referred for treatment at the Chest Pain Center." *Id.* The district court found that although the "meticulous allegations more than satisfied" Rule 9(b), the claims that other physicians who were hospitalists violated the Anti-Kickback Statute and were therefore liable under the False Claims Act had to be dismissed. *Id.* at 667, 671. The allegation that "the hospitalists and their . . . assistants illegally refer the [relators'] patients to [the hospital] in exchange for employment

benefits and salary" did not "provide specific details explaining how the hospitalists [were] engaged in a [kickback] scheme." *Id.* at 671. And even though the complaint alleged "two specific instances in which the hospitalists or their assistants made referrals in exchange for improper benefits," the "sparse allegations d[id] not explain how these incidents fall into a larger . . . plan to violate the [False Claims Act]." *Id.*

The following sections assess the allegations in Headen's amended complaint as to each kickback recipient he identifies.

### i.      Blackshear Elementary

The amended complaint alleges that Ford used the Purpose Project to pay kickbacks to officials at Blackshear Elementary in exchange for patient referrals. (Docket Entry No. 12 at ¶ 16). The complaint alleges that in July and August 2017, the Purpose Project donated $1,216.52 in school uniforms and $2,271.26 in educational materials to the Blackshear school. (*Id.*). The complaint alleges that Ford told Headen "that the monies and gifts Abundant Life [donated] to individuals at Blackshear" and other entities "resulted in thousands of hours of billing and at least $574,000 worth of revenue." (*Id.*).

Abundant Life argues that the amended complaint does not satisfy Rule 9(b) because it "does not allege *who* at Blackshear Elementary received the donations, *when* the referrals were made and by *whom*, or what the connection between the donations and Abundant Life's business is alleged to be." (Docket Entry No. 14 at 9 (emphasis in original)). Abundant Life contends that the complaint is devoid of "any facts leading to the inference that . . . false claims were submitted—such as what services were provided, when, and by whom at Abundant Life." (*Id.*).

Headen did not respond to Abundant Life's argument that the Blackshear Elementary allegations failed to state a claim. Instead, Headen made arguments that applied generally to all the alleged kickback recipients. (*See* Docket Entry No. 16 at 8 (The amended complaint "has alleged specific dates involved in the false claims submissions, the type of services provided, specific schools involved, and they type of medical services that were used in the bills.")). Headen's conclusory allegations fail to satisfy Rule 9(b), and his failure to respond underscores the deficiency. Only four sentences in the amended complaint describe a kickback scheme involving Blackshear Elementary. (Docket Entry No. 12 at ¶ 16). The allegation that "Blackshear Elementary referred students to Abundant Life . . . and some of those treatment services were reimbursed by Medicaid," fails to support an inference that Abundant Life "made the kickbacks with the intent of inducing referrals." *Parikh*, 977 F. Supp. 2d at 665. Even though the complaint alleges two donations, it fails to link them to a kickback scheme. The complaint states only that Ford "diagramed to [Headen] his estimation that the monies and gifts Abundant Life . . . gave to individuals at Blackshear Elementary" resulted in increased billing and revenue. (Docket Entry No. 12 at ¶ 16). The deficiency is similar to that in *Parikh*, 977 F. Supp. 2d at 671–72.

Because the Blackshear Elementary allegations lack the particularity required by Rule 9(b), the court dismisses, without prejudice and with leave to amend, the False Claims Act allegations concerning the school. *Colquitt*, 858 F.3d at 372; *Nunnally*, 519 F. App'x at 894.

### ii. The Madge Bush Living Center

The amended complaint makes only a passing reference to this organization. According to the amended complaint, Ford "admitted to [Headen] his estimation that the monies and gifts Abundant Life . . . gave to individuals at [the] Madge Bush Living Center . . . resulted in" increased

billing and revenue. (Docket Entry No. 12 at ¶ 16). Because this statement provides no details of a kickback scheme, the allegation involving the Madge Bush Living Center is dismissed, again, with leave to amend.

### iii. The Rhodes Charter Elementary School

The amended complaint alleges that in October 2017, Abundant Life received referrals from the Rhodes Charter Elementary School "through Melissa Sahagun for a Medicaid patient." (*Id.* at ¶ 17). According to the complaint, the referral occurred "shortly after Eryca Neville, an employee of the Purpose Project, provided gifts to Rhodes Charter." (*Id.*). The amended complaint does not allege that the unidentified "gifts" induced the referral. *Parikh*, 977 F. Supp. 2d at 665. Nor does it plead facts that could support a strong inference that the gifts were part of a kickback scheme or provide "reliable indicia that lead to a strong inference that claims were actually submitted." *Colquitt*, 858 F.3d at 372. The court dismisses the allegations as to the Rhodes Charter Elementary School, without prejudice and with leave to amend.

### iv. The Houston Independent School District and the Harmony Schools

According to the amended complaint, Ford "shared [with Headen] what he represented as agreements" between Abundant Life and the Houston Independent School District or the Harmony Schools. (Docket Entry No. 12 at ¶ 17). The complaint alleges that the contract with the Houston Independent School District "included an offer to provide free skill building services . . . in exchange for Abundant Life billing Medicaid for mental health services." (*Id.*). It alleges that the District contract contained "signature fields for Chief Financial Officer Rene Barajas, [Controller] Sherrie Robinson, . . . and the General Counsel," and that a "similar Memorandum of Understanding for Harmony Schools was signed by Principal Melissa Knight." (*Id.*). The complaint alleges that

the "aforementioned schools" referred students C.M, J.D., and D.P. to Abundant Life from October to December 2017. (*Id.*). According to the complaint, Ford instructed Desiree Munoz, an employee of his billing company, Blackwise LLC, to submit claims for the services given to these students. (*Id.*). The complaint alleges that Dr. Becky Rowlett improperly worked as the students' case manager by "directing the nature of care given and controlling the billing process." (*Id.*). On December 13, 2017, student D.P. allegedly received an initial assessment, resulting in a $25.02 charge that was subsequently billed to Medicaid. (*Id.* at ¶ 19). The complaint alleges that D.P.'s services "were scheduled to last from" December 13, 2017 to February 13, 2018. (*Id.*). The complaint alleges that the contracts with the Houston Independent School District and the Harmony Schools increased Abundant Life's monthly revenues from $230,000 to $800,000. (*Id.* ¶ 17).

Abundant Life argues that the amended complaint fails to state a claim because it does not sufficiently allege that the parties signed the contracts. (Docket Entry No. 14 at 10). The amended complaint does not satisfy Rule 9(b), Abundant Life contends, because it fails to allege when Abundant Life made the offers, whether the parties executed the contracts, details of the "skills-building" and "mental health and counseling" services, and why "Abundant Life believed the free services could or would induce referrals." (*Id.* at 10–11). Abundant Life argues that even if the amended complaint is read to allege "particular details of a scheme to submit false claims," the allegations lacks the necessary "indicia that lead to a strong inference that claims were actually submitted" and fails to satisfy Rule 9(b). *Grubbs*, 565 F.3d at 190; (Docket Entry No. 14 at 12). According to Abundant Life, the amended complaint alleges only two specific facts: (1) one of the student-patients received an initial assessment on December 13, 2017; and (2) Abundant Life's monthly revenue increased from $230,000 to $800,000. (Docket Entry No. 14 at 12–13). The facts

do not support an inference that a false claim was submitted, Abundant Life contends, because they do "not describe who provided . . . the initial assessment," and because the alleged increase in monthly revenue "is speculative and conclusory." (*Id.* at 12).

Headen responds that the amended complaint alleges sufficient facts to satisfy Rule 9(b). He argues that the amended complaint's allegations show that Abundant Life gave the Houston Independent School District and the Harmony Schools free services in exchange for patient referrals. (Docket Entry No. 16 at 6). Headen points to the allegation that three named students "were referred by [the Houston Independent School District] for mental health counseling services[] after [Eryca] Neville . . . donated gifts to [the District]." (*Id.*). Headen also points to the allegation that Desiree Munoz, an employee of Blackwise LLC, a company Ford owned, submitted claims to Medicare for the three students after they received treatment from October to December 2017. (*Id.*). According to Headen, Abundant Life hired Darren Brown, an independent contractor who negotiated the contracts with the schools, in violation of the False Claims Act. (*Id.* at 6–7). Because the amended complaint alleges those facts, Headen contends, it includes the "who," "what," "when," "where," and "how" necessary to plead fraud under Rule 9(b). (*Id.* at 7).

The amended complaint's allegations about the Houston Independent School District and the Harmony Schools fail to satisfy Rule 9(b)'s pleading requirements. The allegations provide neither specific details supporting a strong inference that a kickback scheme existed nor indicia of false claims submitted to the government. The amended complaint alleges that the contracts were proposed, not executed. (Docket Entry No. 12 at ¶ 17); *see Nunnally*, 519 F. App'x at 894. The amended complaint also fails to allege when Abundant Life made the offers, what "skills-building" services were provided in exchange for referrals, details of the proposed "mental health services,"

or whether Abundant Life believed that the offers would induce the District or the Harmony Schools to make referrals. These allegations are analogous to the ones in *Nunnally*, in which the complaint "merely offer[ed] sweeping and conclusory allegations of 'verbal agreements' . . . without a shred of particularity." *Id*. at 894.

Headen's amended complaint does allege that the District or the Harmony Schools referred three students to Abundant Life for treatment. (Docket Entry No. 12 at ¶ 17). But while Headen's response argues that the Houston Independent School District referred the students to Abundant Life, the complaint states only that the students were "referred by the aforementioned schools and organizations." (*Id.*; Docket Entry No. 16 at 6). The complaint does not allege whether the students received treatment. Instead, the complaint alleges only that one student was given an initial assessment, resulting in a $25.02 "Medicaid code rate." (Docket Entry No. 12 at ¶ 19). While the complaint alleges that the student's "services were scheduled to last from 12/31/2017 to 2/13/2018," it does not allege that the services occurred or that false claims were submitted to or paid by the government. (*Id.*; *see Nunnally*, 519 F. App'x at 894 (An "agreement to charge physicians $3.60 for a blood test, while later charging Medicare $10.60 for the same test" was insufficient under Rule 9(b) because it did "not even indicate that these amounts were real rather than hypothetical.")).

Headen tries to shore up the pleading by arguing that Darren Brown, an independent contractor Ford hired, entered into the contracts with the Houston Independent School District and the Harmony Schools on Abundant Life's behalf. But the amended complaint is silent as to who at Abundant Life made the offers to the organizations.

Lastly, the allegation that Abundant Life's monthly revenues increased from $230,000 to $800,000 is conclusory and vague. The complaint does not state the year of the alleged increases or how only three student referrals resulted in such a dramatic billing increase.

Because the amended complaint fails to sufficiently allege a kickback scheme involving the Houston Independent School District or the Harmony Schools, the court dismisses the allegations concerning these organizations, without prejudice and with leave to amend. *See Parikh*, 977 F. Supp. 2d at 671–72.

### v. The Physicians and Independent Contractors

To the extent that the amended complaint alleges that Abundant Life violated the Anti-Kickback Statute and the False Claims Act by providing "physicians free office space and bonuses in exchange for contracting to provide counseling services and other medical services," the pleading fails to state a claim under Rules 9(b) and 12(b)(6). It alleges only that Abundant Life "provided free office space to independent contractor Dr. Rawls." (Docket Entry No. 12 at ¶ 19; *see Steury*, 625 F.3d at 266 (the complaint must describe the "who, what, when, where, and how of the alleged fraud")). The complaint allegation about "independent contractors who bill federal payors . . . for non-medically essential transportation" fails for the same reason. (Docket Entry No. 12 at ¶ 18). It is conclusory, vague, and, according to the complaint, violates "Medicaid guidelines," not provisions of the Anti-Kickback Statute or the False Claims Act. These claims are dismissed, again, without prejudice and with leave to amend.

### vi. Whether the Amended Complaint Alleged a Direct Claim under 31 U.S.C. § 3729(a)(1)(A)

Abundant Life argues that, in addition to failing to state a claim under § 3729(a)(1)(A) based on violations of the Anti-Kickback Statute, the amended complaint also fails to state a direct claim

under 31 U.S.C. § 3729(a)(1)(A).  (Docket Entry No. 14 at 14).  The complaint alleges a claim based on the Anti-Kickback Statute, but not a cause of action under § 3729(a)(1)(A).  The complaint alleges that Abundant Life "routinely violated" the Anti-Kickback Statute, making it liable under the False Claims Act.  (Docket Entry No. 12 at ¶ 20; *see id.* at ¶¶ 5, 8, 13, 14, 16, 17, 18, 19, 26).  Count I alleges that because the government "would not have paid for the . . . products which it knew to have been the results of illegal inducements, the [government] has been harmed."  (*Id.* at ¶ 26).  Headen's response to the motion to dismiss clarifies that Count I is predicated on violations of the Anti-Kickback Statute and is not a direct claim under § 3729(a)(1)(A).  The response does not address Abundant Life's arguments as to a direct claim, and his analysis centers on the Anti-Kickback Statute.  (*See* Docket Entry No. 16 at 5–10).

The amended complaint does not allege a direct claim under § 3729(a)(1)(A), but if it did, Count I would still fail to satisfy Rules 9(b) and 12(b)(6).  A complaint must sufficiently allege: "(1) a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money or to forfeit moneys due (i.e., that involved a claim)."  *United States ex rel. Harman v. Trinity Indus., Inc.*, 872 F.3d 645, 653–54 (5th Cir. 2017) (quotation omitted).  To be independent of the claim predicated on the Anti-Kickback Statute violations, a direct claim under the False Claims Act requires a separate basis for the "false statement or fraudulent course of conduct."

The amended complaint alleges that Abundant Life violated § 3729(a)(1)(A) of the Act because Medicare reimbursements are conditioned on compliance with the Anti-Kickback Statute and Abundant Life ran illegal kickback schemes.  (Docket Entry No. 12 at ¶¶ 8, 26; Docket Entry No. 16 at 5).  The complaint makes no other fraud allegations.  It does not, for example, allege that

Abundant Life inflated patient-treatment costs or submitted claims for services that it did not perform. *See United States ex rel. Longhi v. Lithium Power Tech., Inc. & Munshi*, 575 F.3d 458, 467–68; *Parikh*, 977 F. Supp. 2d at 662 ("Some of the prototypical claims actionable under the [False Claims Act] are those in which the claimant did not perform the service he requests compensation for or did perform the service but overcharged the government."). Because the complaint relies solely on the Anti-Kickback Statute, it fails to state a direct claim under § 3729(a)(1)(A).

The complaint alleges that Abundant Life "improperly employs . . . physicians[,] thereby engaging in the corporate practice of medicine." (Docket Entry No. 12 at ¶ 14, 19). To the extent that Headen attempts to use that claim as a basis for liability under § 3729(a)(1)(A), the court dismisses the claim because the corporate practice of medicine cannot serve as a predicate offense under the False Claims Act. *See Parikh*, 977 F. Supp. 2d at 675–76; *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 1000 (9th Cir. 2010).

Count I fails to state a plausible claim for relief under § 3729(a)(1)(A). The claim is dismissed, without prejudice and with leave to amend.

### 2. The False Record Claim Under 31 U.S.C. § 3729(a)(1)(B)

The amended complaint alleges in Count II that Abundant Life is liable under 31 U.S.C. § 3729(a)(1)(B) for making false records or statements. (Docket Entry No. 12 at ¶¶ 28–32). Count II incorporates the allegations supporting liability under § 3729(a)(1)(A). Abundant Life argues that the amended complaint fails to state a false-records claim because it does not allege: "*what* records were . . . false"; "*who* prepared them"; "*when* they were made"; and "*how* the records . . . were intended to get a false . . . claim paid by the government." (Docket Entry No. 14 at 16). Headen

responds that the facts alleging that Abundant Life ran a kickback scheme also state a plausible false-records claim. (Docket Entry No. 16 at 10).

Liability attaches under § 3729(a)(1)(B) if a party "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." Unlike § 3729(a)(1)(A), a claim under this section does not require factual allegations that could show a false claim. *Grubbs*, 565 F.3d at 192. In other words, it is unnecessary to "make the step of inferring that the record actually caused a claim to be presented to the Government." *Id.* at 193. Section 3729(a)(1)(B) requires that "the defendant made a false record or statement for the purpose of getting a false or fraudulent claim paid by the Government." *Id.* "A relator alleging a § 3729(a)[(1)(B)] violation must still show the who, what, when, where, and how of the alleged fraud under Rule 9(b)." *United States ex rel. Rafizadeh v. Cont'l Common, Inc.*, 553 F.3d 869, 874 (5th Cir. 2008) (quotation omitted).

In *Grubbs*, 565 F.3d at 192–93, the Fifth Circuit held that a relator's complaint stated a plausible claim for relief under § 3729(a)(1)(B) and satisfied Rule 9(b) because it alleged that physicians had "'writ[ten] notes' about patients that they [had] only see[n] on an as needed basis but bill[ed] as daily face-to-face visits." *Id*. at 193. By contrast, in *Nunnally*, the Fifth Circuit affirmed the dismissal of a complaint alleging a § 3729(a)(1)(B) violation because, unlike the allegations in *Grubbs*, the *Nunnally* complaint did "not contain any detail of comparable particularity" and did not allege a "specific instance of [a false] record or statement." 519 F. App'x at 895.

Here, as in *Nunnally*, the amended complaint does not allege facts that could support an inference of making false records. Headen points to no specific instances of fraud, and the amended

complaint does not allege that Abundant Life made a false record or statement. *See id*. at 895; *Rafizadeh*, 553 F.3d at 874.

Because Count II fails to satisfy Rule 9(b), the claim is dismissed, without prejudice and with leave to amend.

### 3. The Conspiracy Claim Under 31 U.S.C. § 3729(a)(1)(C)

The amended complaint alleges that Abundant Life violated the False Claim Act's conspiracy provision. Section 3729(a)(1)(C) imposes liability on a party who "conspires to commit [violations]" of the Act, including the proscriptions against submitting false claims and making false statements. To state a claim under § 3729(a)(1)(C), "a relator must show '(1) the existence of an unlawful agreement between defendants to get a false or fraudulent claim allowed or paid by [the Government] and (2) at least one act performed in furtherance of that agreement.'" *Grubbs*, 565 F.3d at 193 (quoting *United States ex rel. Farmer v. City of Hous.*, 523 F.3d 333, 343 (5th Cir. 2008)). Because the "particularity requirements of Rule 9(b) apply to the . . . Act's conspiracy provision with equal force as to its 'presentment' and 'record' provisions," a relator "alleging a conspiracy to commit fraud must plead with particularity the conspiracy as well as the overt acts . . . taken in furtherance of the conspiracy." *Id.* (quotation omitted). "As in § 3729(a)[(1)(B)], the conspiracy provision lacks a presentment element, thus presentment of a false claim need not be proven nor pled to prevail on a . . . conspiracy charge." *Id.*

Abundant Life argues that the amended complaint fails "to allege even the most basic elements of a conspiracy." (Docket Entry No. 14 at 17). "To the extent [it] relies on the vague, conclusory allegations regarding agreements with [the Houston Independent School District] and [the] Harmony Schools," Abundant Life contends, the complaint "fails to plead the alleged

conspiracy with particularity." (*Id.*). Headen responds that the amended complaint alleges facts showing "a pattern and practice of [Abundant Life] conspiring to pay or receive illegal remuneration to generate referrals in violation of the [Anti-Kickback Statute]." (Docket Entry No. 16 at 11). Headen argues that Abundant Life "paid sales contractors . . . who promoted [its] services[,] which caused false claims to be submitted" to the government." (*Id.*). Headen argues that Abundant Life's kickback scheme "involved separate entities and schools that remunerated [Abundant Life] based on quid pro quo donations," and that the amended complaint "provided a representative example of multiple false claims submissions." (*Id.*). According to Headen, "the temporal circumstances of the meetings with different schools, coupled with almost immediate referrals suggest a conspiratorial design." (*Id.*).

The amended complaint fails to plead a claim under § 3729(a)(1)(C). With two exceptions, the amended complaint alleges only vague, conclusory facts that fail to support an inference that there were "unlawful agreement[s] between defendants." *Grubbs*, 565 F.3d at 193. For example, the complaint alleges that Abundant Life, through the Purpose Project, donated "computers, uniforms, washers and dryers, and more[,] to several Houston area schools and other organizations for the purpose of business via referrals." (Docket Entry No. 12 at ¶ 5). This alleges actions by Abundant Life, not an agreement with another person or entity.

While the amended complaint alleges that Ford "shared [with Headen] what [Ford] represented as agreements with [the Houston Independent School District] and [the] Harmony [Schools]" showing an unlawful kickback scheme, he did not allege that the parties executed the contracts. (*Id.* at ¶ 17). The amended complaint alleges that a contract with the Houston Independent School District "included an offer to provide free skill building services," and that a

24

contract with the Harmony Schools "was signed by Principal Melissa Knight." (*Id.*). These allegations fail to satisfy Rule 9(b) because they do not assert who from Abundant Life made the offers or signed the alleged contracts, when Abundant Life offered the contract terms, or why Abundant Life believed the contracts would induce patient referrals. *See Health Choice Grp., LLC v. Bayer Corp.*, No. 5:17-CV-126-RWS-CMC, 2018 WL 3637381, at *53 (E.D. Tex. June 29, 2018) (The "relators have not set forth facts alleging an agreement to conspire. There is not a factual basis to determine the roles of each defendant in any agreement or each defendant's specific intent to defraud.").

The complaint's conspiracy allegations also "fail on the independent ground that [the complaint] cannot plead a conspiracy to commit [a False Claims Act] violation without successfully alleging [a False Claims Act] violation." *Health Choice Grp.*, 2018 WL 3637381, at *53 n.18; *see also Health Choice All., LLC*, 2018 WL 4026986, at *58 n.23; *United States ex rel. Westbrook v. Navistar, Inc.*, No. 3:10-CV-1578-O, 2012 WL 10649207, at *9 (N.D. Tex. July 11, 2012); *United States ex rel. Coppock v. Northrup Grumman Corp.*, No. 3:98-CV-2143, 2003 WL 21730668, at *14 n.17 (N.D. Tex. July 22, 2003).

Because the amended complaint fails to allege a conspiracy to violate the False Claims Act, the court dismisses Count III, without prejudice and with leave to amend.

### B.     The Texas Medicaid Fraud Prevention Act Allegations

Lastly, the amended complaint alleges that Abundant Life violated the Texas Medicaid Fraud Protection Act. TEX. HUM. RES. CODE § 36.002. (Docket Entry No. 12 at ¶¶ 41–43). The pleading incorporates the allegations used to support Abundant Life's liability under the False Claims Act.

The parties incorporate their previous arguments on whether the amended complaint states a plausible claim under § 36.002.

> The Texas Medicaid Fraud Prevention Act imposes liability on any person who:
>
> (1) knowingly makes or causes to be made a false statement or misrepresentation of a material fact to permit a person to receive a benefit or payment under the [Texas] Medicaid program that is not authorized or that is greater than the benefit or payment that is authorized;
>
> (2) knowingly conceals or fails to disclose information that permits a person to receive a benefit or payment under the Medicaid program that is not authorized or that is greater than the benefit or payment that is authorized; . . .
>
> (4) knowingly makes, causes to be made, induces, or seeks to induce the making of a false statement or misrepresentation of material fact[; or]
>
> (5) except as authorized under the Medicaid program, knowingly pays, charges, solicits, accepts, or receives, in addition to an amount paid under the Medicaid program, a gift, money, a donation, or other consideration as a condition to the provision of a service or product or the continued provision of a service or product if the cost of the service or product is paid for, in whole or in part, under the Medicaid program.

TEX. HUM. RES. CODE § 36.002(1)–(2), (4)–(5). The Texas Supreme Court, the Fifth Circuit, and federal district courts have explained that the Texas Medicaid Fraud Prevention Act is analogous to the False Claims Act. *See In re Xerox Corp.*, 555 S.W.3d 518, 525 (Tex. 2018); *Tex. v. Caremark, Inc.*, 584 F.3d 655, 657 (5th Cir. 2009); *United States ex rel. Williams v. McKesson Corp.*, No. 3:12-CV-371-B, 2014 WL 3353247, at *4 (N.D. Tex. July 9, 2014); *United States v. Planned Parenthood Gulf Coast, Inc.*, 21 F. Supp. 3d 825, 831 (S.D. Tex. 2014); *United States ex rel. Tex. v. Planned Parenthood Gulf Coast*, No. 9-9-CV-124, 2012 WL 13036270, at *6 (E.D. Tex. Aug. 10, 2012). Courts evaluate Texas Medicaid Fraud Prevention Act "claims under the [False Claims Act's] well-defined legal requirements." *Williams*, 2014 WL 3353247, at *4.

In addition, Rule 9(b) governs claims brought under the Texas Act. *See id*; *Planned Parenthood Gulf Coast*, 2012 WL 13036270, at *5; *United States ex rel. Foster v. Bristol-Myers Squibb Co.*, 587 F. Supp. 2d 805, 827 (E.D. Tex. 2008); *see also United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 384 (5th Cir. 2003). If a relator's complaint fails to state a claim under the False Claims Act, it also fails to state a claim under the Texas Medicaid Fraud Prevention Act. *Williams*, 2014 WL 3353247, at *6.

The allegations under the Texas Medicaid Fraud Prevention Act do not satisfy Rule 9(b). Count V is dismissed, without prejudice and with leave to amend.

## IV. Conclusion

Counts I, II, III, and V are dismissed, without prejudice and with leave to amend. Headen must amend no later than **January 25, 2019**.

Because the parties agree that the Anti-Kickback Statute does not provide an individual cause of action, Count IV is dismissed, with prejudice and without leave to amend.

SIGNED on November 30, 2018, at Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge

27