IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

UNITED STATES OF AMERICA
AND THE STATE OF TEXAS; Ex
rel. THOMAS HEADEN III,

**Civil Action No. 4:18-cv-00773**

Plaintiffs,

**FILED UNDER SEAL**

v.

ABUNDANT LIFE
THERAPEUTIC SERVICES
TEXAS, LLC; JON FORD; AND
JOHN DOES (1-50) INCLUSIVE;

_____Defendants._____

## SECOND AMENDED COMPLAINT

Qui tam relator Thomas Headen III ("Relator"), by his undersigned attorneys, hereby allege as follows:

1.   This is a civil action brought on behalf of the State of Texas, the United States of America and one or more of its Cabinet Departments, including, but not limited to, the United States Department of Health and Human Services ("HHS") against Abundant Life Therapeutic Services Texas, LLC, and John Doe Defendants (collectively referred to as "Defendants") to recover damages and civil penalties under the False Claims Act, 3 I U.S.C. §§3729-3733, as amended by the False Claims Act Amendments of 1986, 42 U.S.C. §1320a-7b, 42 U.S.C. § 1395 (nn), the Fraud Enforcement and Recovery Act of 2009, and the Patient Protection and Affordable Care Act of 2010. Relator has complied

with 31 U.S.C. § 3730-(b)(2) sent to the United States Attorney, and the Texas Attorney General a statement of all material evidence and information related to this Complaint prior to filing the complaint. This Disclosure is supported by material evidence known to the Relator establishing the existence of the Defendant's false claims. Because the Disclosure Statement includes attorney-client communications and work product of Relator's attorney to the Attorney General, the US Attorney, and the respective Attorney General of the Plaintiff State (Texas) in their capacity as potential co-counsel in this litigation, Relator understands the disclosure to be confidential. Prior to the filing of this suit the facts and circumstances which give rise to Defendants' violations of the False Claims Act as well as the state *qui tam* violations, have not been publicly disclosed in a criminal, civil, or administrative hearing, nor in any congressional, administrative, or General Accounting Office report, hearing, audit, or investigation, nor in the news media.

## VENUE AND JURISDICTION

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 139l (b) and (c) and 31 U.S.C. §3732(a) and§ 3730 (b), as well as 28 U.S.C. § 1345 and§ 1331 and§1367 (a).

3.       Venue is proper in this district pursuant to 28 U.S.C. § 139l(b) and (c) and 31 U.S.C. § 3732(a).  Defendants were doing business in this district during the relevant time period, and the claims set forth in this Complaint arose, at least in part, in this district.

## THE PARTIES

4.      The real parties in interest to the claims set forth herein are the United States of America, and the State of Texas.

5.      Qui tam relator Thomas Headen III is a United States citizen and a resident of the State of Texas who worked as consultant at Abundant Life Therapeutics Texas, LLC from April 2017 until February 20, 2018; and as an employee from February 12, 2018 until February 28, 2018.  Relator is an "original source" within the meaning of 31 U.S.C. § 3730(E)(4)(B) and states that to his knowledge the information contained herein concerning Defendant's False Claims Act violations has not been publicly disclosed prior to the filing of this suite.  Plaintiff/Relator brings this suit on behalf of the United States pursuant to 31 U.S.C. § 3730, 42 U.S.C. § 1395 (nn), and 42 U.S.C. § 1320(a)-7(b). Jon Nathaniel Ford (Jon), then Manager and Director of Abundant Life Texas, detailed to Relator the various schemes the organization employed in order to be profitable.  These schemes caused false claims to these federal healthcare program patients including Medicare/Medicaid.  As a result of his role, he was made aware of patient payors, personal services contracts with licensed physicians, dates of submissions, amount of submissions, and the basis for the same as described in the allegations listed *infra*.  Jon also explained how Defendant hired independent contractors such as Darren Brown as marketing agents to generate referrals for Medicare/Medicaid and other federal healthcare program patients in violation of the anti-kickback statute.   Specifically, these representatives were paid in whole or in part for furnishing items covered by federal healthcare programs and received

compensation and bonuses by signing up schools and organizations for "free skills building" in exchange for child referrals. Jon also explained to Realtor exactly how Defendant used a 501c-3 Non-Profit Organization called A.M.P.P., to provide computers, uniforms, washers and dryers, and more to several Houston area schools and other organizations for the purpose of business via referrals, and specifically to induce clients to choose them as a Medicaid service provider.  Relator was also exposed to the fraudulent schemes of the Defendant by way of documents sent to him by Jon. Through his responsibilities at Abundant Life Services Therapeutic Texas, LLC, Relator discovered and witnessed numerous cases in which Defendants fraudulently induced and/or conspired to bill government patients based on prohibited conduct. Relator witnessed so many cases in which these types of cases occurred that he feels the fraud is systematic and widespread throughout Defendants' course of business.

6.     Defendant, Abundant Life Therapeutic Services Texas, LLC is a limited liability company (Texas), and Abundant Life Virginia LLC, and Novis Logica formerly known as Mavin Business Ventures, LLC are the sole members.  Based on relator's review of documents, the individuals composing the membership and management of Abundant Life Therapeutic Services Texas, LLC do not have a medical licenses or certifications.

7.     Defendant Jon Nathaniel Ford is an individual residing at 17311 Coronado Court, Humble, Texas 77346 and may be served by serving his legal representative HENDERSHOT, CANNON & HISEY, P.C. located at 1800 Bering Drive, Suite 600 Houston, Texas 77057.

8. Defendants John Does 1-50, inclusive, whether individual, corporation, associate or otherwise, are unknown to Plaintiffs, but include those co-conspirators who engaged in prohibited conduct described in this Complaint.

## LAW

9. The False Claims Act (FCA) provides in pertinent part that:

Any person who (A) knowingly presents, or causes to be presented a false or fraudulent claim for payment or approval; (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; (C) conspires to commit a violation of [the Act]; ... or (g) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government

\*\*\*

is liable to the United States Government for a civil penalty of not less than $5,500 and not more than $11,000, plus 3 times the amount of damages which the Government sustains because of the act of that person. For purposes of this section, the terms "knowing" and "knowingly" (A) mean that a person, with respect to information (i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information; and (B) require no proof of specific intent to defraud. 31 U.S.C. § 3729. 42 U.S.C. § 1320 (a)-7(b) ("the Federal Anti-Kickback Act), prohibits a person or firm from providing or soliciting remuneration as an inducement for referrals of Medicare, Medicaid, or other healthcare program patients. 42 U.S.C. § 1395 (nn) prohibits self- referrals, and more specifically

prohibits a physician from making certain referrals to entities with which the physician has a financial relationship. Claims submitted to federal healthcare programs based on referrals obtained in violation of the Anti- Kickback Act are false claims under the False Claims Act and all amounts paid by these programs as reimbursement for such claims constitute damages under the False Claims Act.

## PLANS

MEDICARE

10.     Medicare is a government financial health insurance program administered by the Social Security Administration of the United States.  Medicare was promulgated to provide payment for medical services, durable medical equipment and other related health related items for individuals 65 and over. Medicare also makes payment for certain health services provided to additional classes of certain individual health care patients pursuant to federal regulations. The United States, through the Department of Health and Human Services ("HHS") and its component agency, the Centers for Medicare and Medicaid Services ("CMS") administers the Medicare Part A and Medicare Part B programs. Generally, hospitals are reimbursed through the Medicare Part A program, and physicians reimbursed through the Medicare Part B program.

11.     Hospitals, and physicians who participate in the Medicare program, as well as other federal health care programs, are required to enter into contracts or "provider agreements" with HHS. Under the terms of these provider agreements, hospitals, physicians, hospice providers, and other participating health care providers certify that they will comply with all laws, regulations, and guidance concerning proper practices for

6

Medicare providers. Compliance with these provider agreements is a condition for participation in, and receipt of payments from, the Medicare program.

MEDICAID

12.     The federal government enacted the Medicaid program in 1965 as a cooperative undertaking between the federal and state governments to help the states provide health care to low-income individuals. The Medicaid program pays for services pursuant to plans developed by the states and approved by the U.S. Department of Health and Human Services ("HHS") Secretary through the Center for Medicare and Medicaid Services ("CMS"). See 42 U.S.C. § 1396a(a)-(b). States pay doctors, hospitals, pharmacies, and other providers and suppliers of medical items and services according to established rates. See 42 U.S.C. § 1396b(a)(l), 1903(a)(l). The federal government then pays each state a statutorily established share of "the total amount expended ....as medical assistance under the State plan..." See 42 U.S.C. § 1396b(a)(l). This federal-to-state payment is known as federal financial participation ("FFP"). Hospitals, and physicians who participate in the Medicaid program, as well as other federal health care programs, are required to enter into contracts or "provider agreements" with HHS. Under the terms of these provider agreements, hospitals, physicians, hospice providers, and other participating health care providers certify that they will comply with all laws, regulations, and guidance concerning proper practices for Medicaid providers. Compliance with these provider agreements is a condition for participation in, and receipt of payments from, the Medicaid program.

**BACKGROUND.**

13.     Defendant, Abundant Life Therapeutic Services Texas, LLC is hereinafter

referred to as "Defendant entity."

14.     Defendant entity provides free "skills-building" services to schools within the Houston area schools in exchange for federally insured patient referrals.

15.     Defendant entity improperly employs and contracts with physicians, providing physicians free office space in exchange for using their license thereby engaging in the corporate practice of medicine.

16.     In addition, certain of the Defendant entity's members, managers, directors, and personnel were aware of many of the allegations giving rise to this Complaint, including knowingly creating, developing, and propagating schemes to defraud government payors. As a result of the acts and omissions complained of in this Complaint, the Defendant entity is liable, for all relief sought herein by Plaintiff.

**SPECIFIC SCHEME**

17.      Jon Ford emailed Relator documents on January 23, 2018, which detailed Jon's self-dealing and fraudulent schemes. The documents showed that Jon wrote checks to several organizations owned and directed by himself.  For example, Jon wrote at least $42,000 in checks to Assistance and Mentorship to Purpose Project (AMPP), a non-profit for which Jon was director and registered agent, and then used that money for fraudulent schemes. Documents that Jon sent to Relator showed that Blackshear Elementary referred students to Abundant Life Texas for treatment and that many of those treatment services were reimbursed by Medicaid.  AMPP's financials, which Jon also shared with Relator, demonstrated how much and when he donated these funds to AMPP and how AMPP disbursed those funds.  For example, Jon explained to Relator that on or about July 2017, Defendant entity through "AMPP" donated to Blackshear Elementary approximately $1,216.52 in school uniforms. Additionally, on or about August 2017, Defendant entity through "AMPP" donated

8

approximately $2,271.26 in educational materials to Blackshear Elementary.  Jon explained

the AMPP financials by going over AMPPs bank account and expenditures and told the Relator

to email that information over to the Members and Managers of Abundant Life Texas.  Finally,

Jon diagramed and admitted to Relator on a whiteboard that the monies and gifts Abundant

Life Texas gave to the principals at Blackshear Elementary, Madge Bush Living Center, and

the Rhodes Charter Elementary School entities in the Houston Area, resulted in thousands of

hours of billing and at least $574,000 worth of revenue from those fraudulent schemes alone

through direct on campus access to students and the ability to steer the referral of students for

services reimbursed by federal healthcare programs, including Medicaid. For example, Jon

Ford, admitted to Relator that he would utilize donations, gifts, and free life skills services

("skills building"), knowingly in order to induce the referral of Medicaid patients on behalf of

Abundant Life; thus he directed Eryca Neville to provide school uniforms, a washer and dryer

machine, and educational supplies for a total of $7,200 to Blackshear Elementary's Principal

Lewis, in July and August 2017.  During this time, Jon Ford indicated that he utilized this

inroads and subsequent on-site campus access to direct Abundant Life's independent

contractor, and QMHP, Melissa Shagun, so long as Abundant Life was receiving referrals from

BlackShear Elementary, to provide free skills building services/life skills counseling services

weekly during school hours to students at Blackshear Elementary.  According to Jon Ford, he

directed Shagun and other QHMP's to refer Abundant Life several of these Medicaid patients

for mental health services (for emotional and behavior issues) and assessments overseen by

Dr. Rowlett and Dr. Rawls.  Based on this scheme a litany of patients were referred to

Abundant Life according to Jon Ford, including patient J.D. whereby Desiree Munoz, a biller

from Blackwise LLC (company owned by Jon's brother, Jason Ford) subsequently submitted

a billed amount to Medicaid on or about November 2, 2017 for a mental health assessment of

patient J.D $19.83 for the provision of Mental Health Counseling services during this skills building visits with Shagun at Blackshear.  There were several other students whereby Jon Ford explained the donations, and free skills building services would induce the referral of Medicaid patients because Abundant's Life was provided direct access and steering of Medicaid patients to Abundant Life unlike its competitors that did not engage in this conduct; thus the company enjoyed a competitive advantage. In addition, Jon Ford admitted that he was unable to attract significant market share from this institution without these illegal inducements and that the arrangement was mutually beneficial because, Blackhear, Rhodes, and Bush were allowed to utilize these donations and the additional counseling services to supplements its understaffed and underfunded departments.

18.     Additionally, Defendant Jon admitted he utilized this same scheme with Rhodes Elementary School's principal and that on or about October 2017, shortly after Eryca Neville, an employee of AMPP, provided $20,000 of computers purchased from Best Buy to Rhodes Charter Elementary School's principal in Humble Texas, Defendant entity Abundant Life received referrals from Rhodes through Melissa Sahagun who had provided the same skill building services (which reinforce independent living skills) on that date for a Medicaid patient J.W. on October 9, 2017 for, *inter alia*, an initial assessment whereby Abundant life billed Medicaid in the amount of $19.83.  Additionally, Jon Ford pointed out patient J.W. was billed on 10/9/2017, A.W. on 1/30/2018, Z.P. on 12/1/2017, B.C. on 12/4/2017, J.C. on 12/4/2017 for these same Medicaid billed initial assessments by Desiree Munoz during the time Abundant life was providing the school with free skill building services.  Jon also claimed similar actions resulted in contracts with Houston Independent School District ("HISD") and Harmony Schools (Harmony). Jon shared what he represented as agreements with HISD and Harmony during this same time. HISD's contract included an offer to provide free skill building services

with signature fields for Chief Financial Officer Rene Barajas, Sherrie Robinson, Controller, and the General Counsel in exchange for Abundant Life billing Medicaid for mental health services.  A similar Memorandum of Understanding for Harmony Schools was signed by Principal Melissa Knight.  These agreements proposed that HISD and Harmony Schools would accept free skills-building services from Abundant Life Texas, and in exchange provide Abundant Life with student referrals, including Medicaid patients for mental health and counseling services.  The Agreements detail that the services will be free and billed to Texas Medicaid. For example, on or about October 2017 "Patient C.M."; on or about November 2017 "Patient J.D."; and on or about Dec 2017 "Patient D.P. were referred by the aforementioned schools and organizations involved in this scheme to Abundant Life Texas for treatment whereby Medicaid was subsequently billed for services.  Jason Ford, Manager of Abundant Life Texas, also was well aware of the scheme as the aforementioned discussions of how to utilize donations to drive federal healthcare business, specifically Medicaid, with regards to these area schools in the presence of relator.  With full knowledge of Jon's scheme, Jason Ford then caused his employee Desiree Munoz of his billing company, Blackwise LLC, to submit billing to Medicaid for "Patient C.M." from October 2017 to January 2018; "Patient J.D. from November 2017 to February 2018; and "Patient D.P." from December 2017 to February 2018. Abundant Life, although not owned by a licensed individual, then caused Dr. Becky Rowlett to work as case manager for these patients, directing the nature of care given and controlling the billing process.  Despite having operated in the Houston market since January 1, 2016, but as a result of its fraudulent schemes Defendant entity revenues exploded from average monthly revenues $230,000.00 to $510,000 in the month of October alone. By December, the monthly revenues exceeded $800,000.00 based on these kickbacks to above mentioned organizations and schools.

11

19.     In addition, Defendant entities knowingly employ independent contractors who bill federal payors, including Medicaid for non-medically essential transportation to appointments, school, or home also in contravention of Medicaid guidelines. Medicaid rules require the transportation provider to have a contract with the appropriate entity before any services are furnished.  Yet Abundant Life allowed its independent contractors to bill for such services at their discretion throughout his tenure with the company.

20.     Defendant also improperly employs physicians as employees and provides other physicians free office space and bonuses in exchange for contracting to provide counseling services and other medical services that are guided by the corporation itself, in contravention of Medicaid and Texas Medical Board guidelines. For example, Defendants provided free office space to independent contractor Dr. Rawls and used both Dr. Rawls as well as employee Dr. Rowlett's licenses to apply for approval and to accept payments from Medicaid and Medicare as a Multi-Disciplinary Group Practice.  During the prohibited employee relationship with Dr. Rowlett, Dr. Rowlett supervised treatment of Patients and billed Medicaid.  For Patient D.P. the initial assessment took place on 12/13/2017. Based on Defendant's Medicaid code rate this amounted to at least $25.02 for that initial assessment. These services were scheduled to last from 12/13/2017 to 2/13/2017.  As a result of the conduct of Defendant entity alleged herein, Defendant entity submitted or caused to be submitted thousands of hours worth of false claims to the United States. Consequently, Defendant entity received or caused losses of millions of dollars from the United States to which they were not lawfully entitled.

21.     Defendant entity has routinely violated the Anti-Kickback Law, 42 U.S.C. § 1320 (a)-7(b), which prohibits a person or firm from providing or soliciting remuneration as an inducement for referrals of Medicare, Medicaid, or other healthcare program patients

including the use of nonemployee representatives.   For purposes of this statute, according to OIG, the term remuneration includes the transfer of anything of value, directly or indirectly, overtly or covertly, to cash or in kind.

## COUNT I

Claim By and on Behalf of the United States under the False Claims Act (Presenting False Claims).

22.     Plaintiff re-alleges and incorporate by reference paragraphs 1 through 20 as though fully set forth herein.

23.     This is a claim under the False Claims Act, 31 U.S.C. §§ 3729-33, as amended.

24.     Relators have standing to maintain this action by virtue of 31 U.S.C.  § § 3730(b).

25.     The False Claims Act, 31 U.S.C. § 3729(a)(l) and (2), imposes liability upon, *inter alia,* those who knowingly cause to be presented to an officer or employee of the United States, to include state Medicaid systems as federal grantees under 31 U.S.C. § 3729I, false claims for payment or approval.  It also imposes liability on those conspire to get false claims paid. 31 U.S.C. § 3729(a)(3).

26.     By virtue of the acts described herein, Defendants knowingly presented or caused false or fraudulent claims for payment, or knowingly caused false or fraudulent claims for payment to be presented, to officials of the United States Government in violation of 31 U.S.C. § 3729(a)( 1)(A), as amended.

27.     Because the United States would not have paid for the aforementioned products which it knew to have been the result of illegal inducements, the United States has been harmed in an amount equal to the value paid by the United States, directly or

indirectly through State Medicaid programs.

28.     By virtue of the false claims presented or caused to be presented by Defendants, the United States has suffered actual damages and is entitled to recover three times the amount by which it is damaged, attorneys' fees and costs, plus civil money penalties of not less than $5,500 and not more than $11,000 for each of the false claims presented or caused to be presented, and other monetary relief as appropriate.

## COUNT II

Claim By and on Behalf of the United States under the False Claims Act (False Records or Statements).

29.     Plaintiff re-alleges and incorporate by reference paragraphs 1 through 27 as though fully set forth herein.

30.     This is a claim on behalf of the United States under the False Claims Act, 31 U.S.C. $\S\S$ 3729-33, as amended.

31.     Relator has standing to maintain this action by virtue of 31 U.S.C. $\S$ 3730(b).

32.     By virtue of the acts described above and Defendants use of, or activities causing to be used, false records and statements to get false and fraudulent claims paid and approved by the Government, Defendants caused to be made or used false records or statements to get false or fraudulent claims paid or approved by an agency of the United States Government, in violation of 31 U.S.C. $\S$ 3729(a)(l)(B).

33.     By virtue of the false claims presented or caused to be presented by Defendants, the United States has suffered actual damages and is entitled to recover three times the amount by which it is damaged, attorney's fees and costs, plus civil money

penalties of not less than $5,500 and not more than $11,000 for each of the false claims presented or caused to be presented, and other monetary relief as appropriate.

## COUNT III

Claim By and on Behalf of the United States under the False Claims Act (Conspiracy to Submit False Claims).

34.     This is a claim on behalf of the United States under the False Claims Act, 31 U.S.C. §§ 3729-33, as amended.

35.     Plaintiff re-alleges and incorporate by reference paragraphs 1 through 33 as though fully set forth herein.

36.     By reason of the foregoing with respect to Defendant's fraudulent scheme, Defendants conspired together, and with others, to defraud the government in order to get false or fraudulent claims paid by Medicaid, in violation of 31 U.S.C. 31 U.S.C. § 3729 (a)(l)(C), as amended.  In furtherance of the conspiracy, Defendants acted to affect the objects of the conspiracy alleged herein.

37.     By virtue of the false claims presented or caused to be presented by Defendants pursuant to this conspiracy, and by virtue of the false statements made in furtherance of this conspiracy, the United States has suffered actual damages and is entitled to recover three times the amount by which it is damaged, plus civil-money penalties of not less than $5,500 and not more than $11,000 for each of the false claims presented or caused to be presented, and other monetary relief as appropriate.

## COUNT IV
## VIOLATIONS OF 42 U.S.C. § 1320(a)-7(b)

38.     Plaintiff adopts and incorporates by reference paragraphs 1 through 32 as though fully set forth herein.

39.     Defendants principals, agents, or employees knowingly compensated paid illegal compensation in order to generate Federal health care program business.

40.      Defendant's fraudulent actions described herein have resulted in damages to the United States equal to the amount paid or reimbursed to Defendants by the United States through Medicaid for false or fraudulent claims.

41.     Relators requests entry of judgment in its favor on behalf of the United States, and against Defendants, in an amount equal to triple the damages sustained by the reason of Defendant's aforesaid conduct, together with civil penalties as permitted by 31 U.S.C. § 3729, attorney's fees and costs, and such other, different, or further relief to which Relators may be entitled.


## COUNT V
## VIOLATIONS OF TEXAS FALSE CLAIMS ACT

1.  The aforementioned allegations are realleged as if fully set forth herein.

2.      This is a qui tam action brought pursuant to by Relator Headen on behalf of himself and the State of Texas to recover remedies and civil penalties under the Texas Medicaid Fraud Prevention Act "("TMPA") including 36.110, and Defendants violated the TMFPA including but not limited to the following respects:

      a.      Section 36.002 (1) prohibits a person from knowingly or

intentionally making or causing to be made a false statement or misrepresentation of material fact on an application for a contract, benefit, or payment under the Medicaid Program; or that is intended to be used to determine a person's eligibility for a benefit or payment under the Medicaid program;

b.      Section 36.002(2) prohibits a person from knowingly or intentionally concealing or failing to disclose an event that permits a person to receive a benefit or payment that is not authorized, or that permits a person to receive a benefit or payment that is greater than the benefit or payment that is authorized;

c.      Section 36.002(4) prohibits a person from knowingly or intentionally making or causing to be made a false statement or misrepresentation of fact concerning information required to be provided by a federal or state law, rule, regulation or provider agreement pertaining to the Medicaid Program;

d.      Section 36.002(5) prohibits a person, except as authorized under the Medicaid program, from knowingly paying, charging, soliciting, accepting, or receiving, in addition to an amount paid under the Medicaid program, a gift, money, a donation, or other consideration as a condition to the provision of a service or product or the continued provision of a service or product if the cost of the service or product is paid for, in whole or in part, under the Medicaid program;

3.      This Court is requested to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 (a) and 31 U.S.C. § 3732(b) or pendent jurisdiction over this state-law claim as it is predicated upon the same facts as the federal claim asserted in Count 1, and so forms part of the same case or controversy.

## PRAYER FOR RELIEF

WHEREFORE, the United States demands and prays that judgment be entered

in favor of the United States:

1. On Counts I-III, under the False Claims Act, against Defendants for

triple the amount of the United States' actual damages (including investigative

costs), plus civil penalties are as allowed by law for each false claim or record and

for all costs of this civil action[1]:

2. For all costs and attorney's fees of this civil action; and

3. For such other and further as the Court deems just and equitable.

WHEREFORE, Relators demand and pray that judgment be entered in their

favor;

1. On Counts I-III, under the False Claims Act, for the maximum

percentage of all civil penalties and damages obtained from Defendant pursuant to 31

U.S.C. §3730, reasonable attorney's fees, and all costs and expenses incurred against

Defendant; and

2. Such other relief as the Court deems just and proper.

On the TMFPA Relator requests:

1. That the Court enter judgment against Defendants in the maximum

amount of remedies available under the State of Texas over which the Court accepts

jurisdiction, to include any multipliers provided in such Acts; This is a qui tam action

brought pursuant to by Relator Headen on behalf of himself and the State of Texas to

recover remedies and civil penalties under the Texas Medicaid Fraud Prevention Act

"("TMPA") including 36.052

and Defendants violated the TMFPA including but not limited to the following respects:

    a.      Section 36.052 (a) Except as provided by Subsection (c), a person who commits an unlawful act is liable to the state for:

    (1) The amount of any payment or the value of any monetary or in-kind benefit provided under the Medicaid program, directly, or indirectly, as a result of the unlawful act, including any payment made to a third party;

    (2) Interest on the amount of the payment or the value of the benefit described by Subdivision (1) at the prejudgment interest rate in effect on the day the payment or benefit was received or paid, for the period from the date the benefit was received or paid to the date that the state recovers the amount of the payment or value of the benefit;

    (3) A civil penalty of

        (A)      Not less than $5,500 or the minimum amount imposed as provided by 31 U.S.C. 3729(a), if that amount exceeds $5,500, and not more than $15,000 or the maximum amount imposed as provided by 31 U.S.C. Section 3719(a), if that amount exceeds $15,000 for each unlawful act committed by the person that results in the injury to an elderly person, as defined by Section 48.002(a)(1), a person with a disability, as defined by 48.002(a)(8)(A) or. A person younger than 18 years of age; or

        (B) Not less than $5,500 or the minimum amount imposed as provided by 31 U.S.C. Section 3729(a), if that amount exceeds $5,500, and

not more than $11,000 or the maximum amount imposed as

provide by 31 U.S.C. Section 3729(a), if that amount exceeds

$11,000 for each unlawful act committed by the person that does

not result in injury to a person described by Paragraph (A); and

  (4)  Two times the amount of the payment or the value of the benefit

described by Subdivision (1).

  2.    That Relator be awarded all costs, attorney's fees, and

expenses;   litigation

  3.    That the State and Relator receive all relief, both at law and in equity, to

which they may reasonably appear entitled.

---

[1] *As* of August 1, 2016, False Claims Act civil penalties increase to between $10,781.40 and $21,562.80 per claim, plus three times the amount of damages that the federal government sustains because of the false claim in addition to attorney's fees for violations after Nov. 2, 2015.

## **JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a Jury as to

all issues and counts so triable as a matter of right.

Respectfully submitted this the 25th day of January, 2019

*Isl* Volney Brand
Volney Brand(#24073253)
Brand Law PLLC
3626 N Hall Ste 610
Dallas, Tx Ste 75219
Telephone: 214-932-1472
Fax:214-932-1473
Email: volney@brandlaw.us.com

## <u>CERTIFICATE OF SERVICE</u>

Matthew Whitaker
U.S. Department of Justice
950 Pennsylvania Avenue, NW Washington, DC 20530-0001


Ryan Patrick
U.S. Attorney's Office 1000 Louisiana, Ste. 2300 Houston, Tx 77002

Jim Davis
Deputy Attorney General Civil Litigation Price Daniel Senior Building
8th Floor 209 W 14th Street Austin, Tx 78701

IN THE UNITED STATES DISTRICT COURT
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

UNITED STATES OF AMERICA AND
THE STATE OF TEXAS; Ex rel. THOMAS
HEADEN ID,

        Plaintiffs,

        **v.**

**ABUNDANT LIFE THERAPEUTIC**
**SERVICES TEXAS, LLC; AND JOHN**
**DOES (1-50) INCLUSIVE;**

        <u>**Defendants.**</u>

**Civil Action No. 4:18-cv-00773**

**FILED UNDER SEAL**

## <u>WRITTEN DISCLOSURE PURSUANT TO 31 U.S.C. § 3730(b)(2)</u>

COME NOW, the Relator pursuant to 31 U.S.C. § 3730(b)(2) provide the following information in describing the fraudulent actions of Defendants. Relator was a consultant hired by Abundant Life Therapeutic Services Texas, LLC, from April 2017 to February 20, 2018. He defended OCR investigations with a potential fine of $2 million, dealt with unemployment claims, composed policies, procedures, contracts, handbooks, and more. Abundant Life Therapeutic Services Texas, LLC had no HIPAA, Human Resources, or operational policies. Relator identified and brought to light some 56 recommended and required policies, and many of the policies that were required by law did not exist within the corporation.

During his tenure with Defendants, Relator was often asked to mediate internal disputes between the Members and Managers involving payments, ownership, and control of the organization's "trade secrets". These "trade secrets" were discovered to be kick-back contracts with Houston ISD and other entities.  After refusing to take sides

in the Member dispute, Realtor's contract was terminated, citing "breach of fiduciary duty", yet no specifics were given. Based on Relator's personal observations, the Defendants are causing false claims to be submitted to the government based on commissions in violation of the relevant government regulations related to payment.

Persons or documents producing discoverable facts:

1)      Jon Nathanial Ford

2)      Jason Ford

3)      Stacy Rawls, Chief Medical Officer

4)      Darren Brown, School Recruiter/Sales

23

5)      Becky Rowlett, Director of Counseling Services

6)      Jill Wheeler, Director of Clinical

7)      Melissa Sahagun, School Clinician

8)      Marsha Dillard, Director of Case Management

9)      Miriam Harris, Client Recruiter, Trainer

10)     Eryca Neville, AMPP Director

11)     Desiree Munoz, biller for Blackwise, LLC

12)     Abundant Life Therapeutic Services Texas, LLC Client Portal

13)     Targeted Case Management Rehabilitative Services Request Form

14)     Texas Standard Prior Authorization Request Form For HealthCare Services

15)     Referral Spreadsheets from schools involved.

16)     Melissa Knight, Harmony School Principal

17)     CANS and ANSA systems

18)     Service Authorization Recovery Plans

Respectfully submitted this the 25th day of January, 2017.

/s/ Volney Brand

Volney Brand
Brand Law PLLC
3626 N Hall Ste 610
 Dallas, Tx 75219 Ste 610
Telephone: 214-932-1472
Fax: 214-932-1473 (prohac filed)

## <u>CERTIFICATE OF SERVICE</u>

Matthew Whitaker
U.S. Department of Justice
950 Pennsylvania Avenue, NW Washington, DC 20530-0001

Ryan Patrick
U.S. Attorney's Office 1000 Louisiana, Ste. 2300 Houston, Tx 77002

Jim Davis
Deputy Attorney General Civil Litigation Price Daniel Senior Building
8th Floor 209 W 14th Street Austin, Tx 78701