# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA AND THE STATE OF TEXAS; Ex rel. THOMAS HEADEN III,** | |
| **Plaintiffs,** | **Civil Action No. 4:18-cv-00773** |
| v. | **FILED UNDER SEAL** |
| **ABUNDANT LIFE THERAPEUTIC SERVICES TEXAS, LLC; JON FORD; AND JOHN DOES (1-50) INCLUSIVE;** | |
| **Defendants.** | |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

COME NOW, the above-named Plaintiffs, by and through undersigned counsel, and file this their Response to Defendants' Abundant Life Therapeutic Services, LLC ("ABL"); Jon Ford; and John Does (1-50) Inclusive Motion to Dismiss, and in support thereof, state the following:

### INCORPORATION OF PRIOR BRIEFING

Plaintiff Headen incorporates, as if fully set out herein, his prior Response to Defendants Motion to Dismiss as well as the State of Texas' Statement of Interest.

### ARGUMENT

Plaintiff's Second Amended Complaint clearly alleges what is required under Rules 9(b) and 12. Plaintiff has alleged sufficient details of the purported scheme to submit false claims paired with reliable indicia that lead to a strong inference that false claims were actually submitted to the Government. For example, Plaintiff provided sufficient information to determine who received donations at Blackshear elementary, when the donations were made, by whom at Abundant life made the donations, and the amounts. Plaintiffs also provided facts that lead to a plausible inference as to why said claims were linked to an illegal kickback scheme. Indeed, the Second Amended Complaint also provided examples of patients that were referred and the concomitant services provided by Abundant Life based on its fraudulent scheme. Still, Defendants relied heavily on cases that don't provide this Court with a basis for dismissal of Plaintiff's claims based on the facts alleged in the Second Amended Complaint. In *Grubbs,* the court analyzed other Circuits before determining with respect to violations of 3729 (a)(1), the pleadings should simply be measured in a context-specific fashion, as opposed to a single court-articulated standard. In fact, it held that it was adequate to allege that a false claim was knowingly presented regardless of its exact amount, as the statute lacks the elements of reliance and damages. See *Grubbs,* 565 F.3d at 188-190. The court also noted that at trial a qui tam plaintiff could prevail by proving the existence of a billing scheme

and offering reliable indicia that false claims were submitted as a result of the scheme (such as dates services were fraudulently provided or recorded, by whom, and evidence of the procedure), because a reasonable jury could infer that more likely than not a false bill was presented. Given this, the Court noted that "to require these [additional] details at pleading is one small step shy of requiring production of actual documentation….not demanded to win at trial" and it rejected this approach. Id. at 190. Although Defendants relied on the fact that the claims against the hospital were dismissed as opposed to the claims against the doctors, they were comparing apples and oranges. There was no allegation that the hospitals were vicariously liable for the actions of the doctors or nurses; and there was no allegation that it operated with the requisite intent. In this case, Plaintiff has alleged facts against Defendants beyond those found in *Grubbs*, including the fact that Ford, admitted as director of Abundant life that he created the scheme to induce reimbursements from federal payors. As such, that case does not support a basis for dismissing Plaintiff's claims.

The Court should reject Defendant's argument that Plaintiff relied on "semantic changes" in order to support its basis for dismissal. Plaintiff is not relying on semantic changes. The Second Amended Complaint clearly identified John Ford (Director of AMP) as having admitted to a fraudulent scheme whereby he utilized shell companies to donate to specific individuals at certain schools in exchange for, *inter alia*, direct on campus access to students and the ability to steer the referral of students for services reimbursed by federal healthcare programs, including Medicaid. Plaintiff provided the time frame of the scheme, as well as the provision of gifts involved such that "John Ford indicated that he utilized this inroads and subsequent on-site campus to direct Abundant Life's independent contractor, and QMHP, Melissa Shagun, so long as Abundant Life was receiving referrals from Blackshear Elementary, to provide free skills building services/life skills counseling services weekly during school hours to students at Blackshear Elementary." "According to Jon Ford, he directed Shagun and other QHMP's to refer Abundant Life several of these Medicaid patients for mental health services (for emotional and behaviorial issues) and assessments overseen by Dr Rowlett and Dr. Rawls." "Based on the scheme a litany of patients

3

were referred to Abundant Life according to Jon Ford, including patient J.D., whereby Desiree Munoz, a biller from Blackwise LLC (company owned by Jon's brother, Jason Ford) subsequently submitted a billed amount to Medicaid on or about November 2, 21017 for a mental health assessment of patient J.D. for $19.83 for the provision of Mental Health Counseling services during this skills building visit with Shagun at Blackshear. According to Jon, there were several other student visits impacted by these donations and free skills building services that caused inducement of referral of Medicaid patients because Abundant Life was provided direct access and steering of Medicaid patients to Abundant Life unlike its competitors that did not engage in this conduct; thus the company enjoyed a competitive advantage. In addition, Ford admitted he was unable to attract significant market share without these illegal inducements and that these arrangements were mutually beneficial because the named schools were allowed to utilize these donations and additional counseling services to supplement its understaffed and underfunded departments.

Despite the allegations, Defendants failed to present this Court with any persuasive authority that serves as a basis for dismissal of Plaintiff's claims. Its reliance on *Colquitt*, 858 F.3d at 369 and *Nunally*, 519 F.App'x at 895 is similarly misplaced. Plaintiff has pled facts beyond those found in *Colquitt*, 858 F.3d at 369, because that plaintiff relied on supposition to conclude that federally healthcare claims were submitted pursuant to an illegal scheme. Plaintiff also provided facts beyond those articulated in *Nunally*, 519 F.App'x at 895, a case that simply referenced what could be perceived as a hypothetical agreement involving a much higher pay scale for Medicare claims. And Defendant's reliance on *Parikh* too misses the mark. That court recognized that the AKS does not have an actual referral causation requirement and that it is unnecessary to plead particular claims submitted to the government as a result of the kickback scheme. *Parikh*, 977 F.Supp. 2d at 665. Ultimately, it reiterated the holding in *Grubbs*. More importantly, in *Parikh*, that court did find claims that survived against certain players while dismissing claims against the Hospitalist because there were no details that explained how the hospitalist were engaged in a scheme that violated the AKS and Stark. In other words, the denial was based on the fact there were simply general allegations of referrals in exchange for benefits and a salary. *Parikh*, 977

4

F. Supp. 2d at 671. Again, the facts in this case are inapposite and there is no basis for dismissal of Plaintiff's claims. Here, Plaintiff provided specific details of the scheme, including the precise timing, type of kickbacks involved, the amount of the kickbacks, the circumstances leading up to the scheme, and obfuscation through shell companies of Defendants involvement similar to the claims which survived in *Parikh*. Based on the logic in *Parikh*, Plaintiff's claims should survive. Although, Defendants also took issue with the fact that at times, members of Abundant Life actually provided the prohibited service, that does not take away from the fact that Plaintiff alleged that Ford directed payments to Blackshear's principal for this purpose. See e.g. *MDG Int'l v. Australian Gold, Inc.*, No. 1:07-cv-1096, 2008 WL 3982072, at *3 (S.D. Ind. Aug. 22, 2008)(citing *Blaz v. Michael Reese Hosp. Found.*, 191 F.R.D. 570, 574 (N.D. Ill. 1999)(finding the institutional identity of the caller is what matters, not the individual employee, so plaintiff sufficiently pled the "who" requirement of Rule 9(b)). And the AKS prohibits any person or entity from offering, making, soliciting, or accepting remuneration, in cash or in kind, directly or indirectly, to induce or reward any person for purchasing, ordering, or recommending or *arranging* (emphasis added) for the purchasing or ordering of federally-funded medical goods or services. In other words, Plaintiff clearly alleged that Ford along with the Principal's at various schools, including Blackshear, arranged for the utilization of Abundant Life's services based on the gifts and free services provided to the school which were reimbursed by federal healthcare programs. The statute is broadly written and there is no limitation whereby *such person* who has been induced has to be the same person making the referral as advocated by the defendants. To be sure, if Plaintiff's claims are taken to be true, as required, the Second Amended Complaint has clearly addressed the Court's concern regarding Plaintiff's alleged pleading deficiencies, including those facts which link a scheme to submit false claims to the submission of false claims. As such, Defendant's motion should be denied as to the presentment claim.

   Defendants acknowledged that any claim for items or services resulting from a violation of the AKS is a false claim for purposes of the FCA. Although the foregoing facts made it unnecessary, Plaintiff

also alleges that Ford hired and directed independent contractor, Shagun to engage in a quid pro quo relationship whereby Defendant provided free skills building services, in addition to the donations to Blackshear, for purposes of obtaining referrals for patient services reimbursed by federal healthcare programs, including Medicaid. Plaintiff described the details of a false claims presented to the government, (including, who, for what, when, the amount, where, and the causal connection of the scheme to the false claims) as a result. Plaintiff also described how the same scheme was implemented at other area schools.

Plaintiff's Second Amended Claim states a claim for violation of 3729(a)(1)(B) for making false records or statements. The Second Amended Complaint has indicated that each billing submission to Medicaid constituted a false record based on false certification regarding compliance with the AKS, when the submissions were made, who caused the submission of these records, as well as the fact that certification of compliance with the AKS was a condition of payment by the government. Plaintiff also provided information about who prepared the bills from Defendant's entity. As such, Defendant's motion should be denied as to this claim as well.

As Plaintiff's Second Amended Complaint contains enough facts under Rule 12 and 9B to state a claim for violation of the False Claims Act, the Court should reinstate Plaintiff's conspiracy claim as well. Plaintiff described how Ford masterminded the kickback offers, previously alleged a basis as to why it believed the free skills building services would induce referrals, when this occurred, and the federally reimbursed services for the patients involved. Whether or not there was a signed and executed contract involved is a factor but it is not dispositive on the issue of whether or not a conspiracy was formed. In this case, Plaintiff provided allegations, *inter alia,* of a quid pro quo arrangement between area principals with regard to services provided by Defendants through federally reimbursed programs as well as the resultant financial boon. Plaintiff also detailed the benefits of such arrangements including the supplementation of understaffed schools. In short, Plaintiff's Second Amended Complaint states a conspiracy claim for violation of the FCA. As the court in *Grubbs* noted, requiring Plaintiff to do more

than what would be necessary to prevail at trial is improper and Defendant's invitation for the Court to do so should be rejected.

Finally, Plaintiff also stated a claim for violation of the Texas Medicaid Fraud Prevention Act. Plaintiff incorporates by reference the arguments filed by the State of Texas. (Doc. 23). As mentioned, the Texas statute does not require the presentment of a false claim. Furthermore, Plaintiff's Second Amended Complaint does state a claim for violation of the False Claims Act. Based on the statute, Plaintiff did state a claim for violation of the Texas statute, and Defendants motion should be denied.

## CONCLUSION

Based on the foregoing factual circumstances, relevant law, and procedural posture of this case, Plaintiffs respectfully request that the Court DENY Defendant's Motion to Dismiss as to each Count in its Complaint.[1] Plaintiffs request leave to amend this Complaint if the Court find's Plaintiff's claims deficient.

Dated: March 5, 2019

Respectfully Submitted,

/s/ Volney Brand
Volney Brand (24073253)
Brand Law PLLC
3626 N Hall St Suite 610
Dallas, Tx 75219
Telephone: 214-932-1472
Fax: 214-932-1473 (prohac)

## **CERTIFICATE OF SERVICE**

William Barr
U.S. Department of Justice
950 Pennsylvania Avenue, NW Washington, DC 20530-0001

Ryan Patrick
U.S. Attorney's Office 1000 Louisiana, Ste. 2300 Houston, Tx 77002

Jim Davis
Deputy Attorney General Civil Litigation Price Daniel Senior Building 8th Floor 209 W 14th Street Austin, Tx 78701