**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA and | § | |
| THE STATE OF TEXAS, *ex rel.* | § | |
| THOMAS HEADEN III, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-18-773 |
| | § | |
| ABUNDANT LIFE THERAPEUTIC | § | |
| SERVICES TEXAS, LLC, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

Relator Thomas Headen filed this *qui tam* action against Abundant Life Therapeutic Services Texas, LLC, a medical-services provider; Jon Ford, the former manager of Abundant Life; and unidentified defendants, alleging violations of the False Claims Act, the Anti-Kickback Statute, and the Texas Medicaid Fraud Prevention Act. (Docket Entry Nos. 1, 20). Abundant Life moved to dismiss the amended complaint, which the court granted, without prejudice and with leave to amend. (Docket Entry Nos. 12, 14, 18). Headen filed a second amended complaint in January 2019. (Docket Entry No. 20). Abundant Life again moved to dismiss, Headen responded, Abundant Life replied, and Headen surreplied. (Docket Entry Nos. 22, 30, 31, 33). Ford joined Abundant Life's motion to dismiss. (Docket Entry Nos. 27, 32).

Based on a review of the second amended complaint; the motions, response, reply, and surreply; the record; the arguments of counsel presented at a hearing; and the applicable law, the motions to dismiss are granted. (Docket Entry Nos. 22, 27). Counts I, II, III, and IV are dismissed, with prejudice and without leave to amend, because amendment would be futile. The court declines

to exercise jurisdiction over the pendent Texas-law claim, Count V, which is dismissed, without prejudice, so that Headen may refile it in state court. A dismissal order is separately entered.

The reasons for these rulings are explained in detail below.

## I. Background

The second amended complaint alleges the following facts. Headen was a consultant for Abundant Life from April 2017 to February 20, 2018, and was an employee from February 12 to February 28, 2018. (Docket Entry No. 20 at ¶ 5). In January 2018, Ford, then Abundant Life's manager, told Headen that "in order to induce the referral of Medicaid patients [to] Abundant Life," he had paid kickbacks to officials at Blackshear Elementary, the Madge Bush Living Center, Rhodes Charter Elementary School, Houston Independent School District, and Harmony Schools. (*Id*. at ¶¶ 5, 17–18). The kickbacks were paid through a nonprofit organization that Ford directed, the Assistance and Mentorship to Purpose Project. (*Id*.). Ford transferred at least $42,000 to the Purpose Project for use in the scheme. (*Id*. at ¶ 17).

In July and August 2017, Ford instructed Eryca Neville, a Purpose Project employee, to give $7,200 in school uniforms, a washer and dryer machine, and educational supplies to Blackshear Elementary's principal. (*Id.*). Using "on-site campus access," Ford directed Melissa Shagun, an independent contractor working with Abundant Life, "to provide free skills building services . . . during school hours to students at Blackshear Elementary," then to refer Blackshear students to Abundant Life for "mental health services . . . and assessments." (*Id.*). Ford told Headen that Shagun had referred "a litany of patients" to Abundant Life, including one student-patient named J.D. (*Id.*). According to Ford, Desiree Munoz, an employee of Blackwise LLC, a company owned

by Jon Ford's brother, billed Medicaid $19.83 for a mental-health assessment Abundant Life provided J.D. (*Id.*).

Jon Ford told Headen that he used the same scheme to induce referrals to Abundant Life from Rhodes Charter Elementary School. (*Id.* at ¶ 18). Eryca Neville, the Purpose Project employee, gave the Rhodes Charter principal $20,000 in "computers purchased from Best Buy" in October 2017. (*Id.*). Abundant Life then received student referrals from Rhodes Charter through Melissa Shagun, the independent contractor working on Abundant Life's behalf. (*Id.*). Ford told Headen that as a result of the donation and subsequent referrals, Desiree Munoz and Blackwise billed Medicaid $19.83 four times for "initial assessments" Abundant Life gave student-patients J.W., A.W., Z.P. and B.C. from October to December 2017. (*Id.*).

Ford also told Headen about a contract between Abundant Life and the Houston Independent School District, and between Abundant Life and the Harmony Schools. (*Id.*). The contracts "included an offer [for Abundant Life] to provide free skills building services . . . in exchange for Abundant Life billing Medicaid for mental health services." (*Id.*). The services would "be free and billed to Texas [M]edicaid." (*Id.*). The HISD contract, according to Ford, had signature lines for the HISD Chief Financial Officer, Rene Barajas; the HISD Controller, Sherrie Robinson; and the general counsel. (*Id.*). HISD and Harmony Schools student-patients received services from Abundant Life between October and December 2017. (*Id.*). Desiree Munoz billed Medicaid for certain services patients C.M, J.D., and D.P .received from Abundant Life. (*Id.*).

Headen learned from Ford that Abundant Life retained independent contractors as marketing agents to generate referrals to Medicare and Medicaid. (*Id.* at ¶ 5). Abundant Life paid these contractors for "signing up schools and organizations for 'free skills building' in exchange for child

referrals." (*Id.*). Ford told Headen that the schemes were illegal and that they "resulted in thousands of hours of billing," some reimbursed by Medicaid. (*Id.* at ¶¶ 17–18). According to Ford, this activity increased Abundant Life's monthly revenue from $230,000 to $800,000. (*Id.* at ¶ 18). The arrangements with the schools were "mutually beneficial," Ford claimed, because the schools used the "donations and additional counseling services to supplement its understaffed and underfunded departments." (*Id.* at ¶17).

Ford told Headen that Abundant Life had also retained independent contractors to perform nonessential transportation services. (*Id.* at ¶ 19). These contractors drove Abundant Life patients to their homes, schools, and appointments, billing the federal government at their discretion for those trips. (*Id.*). According to Ford, these discretionary billing practices violated Medicare regulations requiring medical providers to contract with a referring entity before billing for transportation services, and violated the regulatory requirement that the billed services be medically necessary. (*Id.*).

Ford explained to Headen that Abundant Life hired physicians and provided them and other, nonemployee physicians, doctors with benefits. (*Id.* at ¶¶ 15, 20). Abundant Life used its employee-physicians' licenses "to apply for approval and to accept payments from Medicaid and Medicare." (*Id.* at ¶ 20). Abundant Life gave bonuses and free office space to physicians in exchange for services that facilitated Abundant Life's false Medicare and Medicaid bills, causing "thousands of hours worth of false claims to [be submitted to] the United States." (*Id.*). As a result of those improper employer-employee relationships, Abundant Life engaged in the unauthorized practice of medicine. (*Id.* at ¶ 15).

In March 2018, Headen filed this *qui tam* action under seal. (Docket Entry No. 1). After the United States and the State of Texas declined to intervene in May 2018, the court unsealed the complaint and related filings. (Docket Entry Nos. 6, 7). In August 2018, Abundant Life moved to dismiss Headen's complaint under Rules 9(b) and 12(b)(6). (Docket Entry No. 10). That motion became moot when Headen filed an amended complaint in September 2018. (Docket Entry Nos. 12, 13). In October 2018, Abundant Life moved to dismiss the amended complaint, which this court granted in November 2018. (Docket Entry Nos. 14, 18). Headen filed a second amended complaint in January 2019, and Abundant Life and Ford again moved to dismiss. (Docket Entry Nos. 20, 22, 27).

## II.      The Legal Standards

### A.      Rule 12(b)(6)

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED.R.CIV.P. 12(b)(6). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

"To withstand a Rule 12(b)(6) motion, [a] complaint must allege 'more than labels and conclusions,'" and "a formulaic recitation of the elements of a cause of action will not do." *Norris v. Hearst Tr.*, 500 F.3d 454, 464 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557). "[A] complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.* (quotation and alteration omitted) (quoting *Twombly*, 550 U.S. at 558).

When a complaint fails to state a claim, the court should generally give the plaintiff a chance to amend under Rule 15(a) before dismissing the action with prejudice, unless it is clear that to do so would be futile. *See Carroll v. Fort James Corp.*, 470 F.3d 1171, 1175 (5th Cir. 2006) (Rule 15(a) "evinces a bias in favor of granting leave to amend"); *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."). A court in its discretion may deny a motion to amend for futility if the amended complaint would fail to state a claim on which relief could be granted.

*Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016); *see Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 232 (5th Cir. 2012).

### B.      Rule 9(b)

"[A] complaint filed under the False Claims Act must meet the heightened pleading standard of Rule 9(b)." *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009). Relators "must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). That standard requires pleadings to "set forth the who, what, when, where, and how of the alleged fraud." *United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 266 (5th Cir. 2010) (quotation omitted). A relator's complaint may survive a motion to dismiss by alleging either "the details of an actually submitted false claim" or "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Grubbs*, 565 F.3d at 190.

### C.      The False Claims Act and the Anti-Kickback Statute

Enacted during the Civil War to curb widespread fraud, the False Claims Act "is intended to protect the Treasury against the hungry and unscrupulous host that encompasses it on every side." *Grubbs*, 565 F.3d at 184. "To aid the rooting out of fraud, the Act provides for civil suits brought by both the Attorney General and by private persons, termed relators." *Id.* "[R]elators share in the government's winnings, receiving a bounty of up to thirty percent of the government's proceeds." *United States ex rel. Ruscher v. Omnicare, Inc.*, No. 4:08-CV-3396, 2014 WL 2618158, at *2 (S.D. Tex. June 12, 2014) (quotation omitted).

Whether the action is prosecuted by the government or by relators in a *qui tam* capacity, a person is liable under the False Claims Act if that person: "knowingly presents, or causes to be

presented, a false or fraudulent claim for payment or approval"; "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim"; [or] "conspires to commit a violation of [the False Claims Act]." 31 U.S.C. § 3729(a)(1)(A)–(C). "Knowingly" means "actual knowledge of the information"; "deliberate ignorance of the truth or falsity of the information"; or "reckless disregard to the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A)(i)–(iii). Specific intent to defraud is not required to establish knowledge. 31 U.S.C. § 3729(b)(1)(B). "Material" means "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4).

Many actions under the False Claims Act allege common-law fraud—"those in which the claimant did not perform the service he requests compensation for or did perform the service but overcharged the government." *United States ex rel. Parikh v. Citizens Med. Ctr.*, 977 F. Supp. 2d 654, 662 (S.D. Tex. 2013). But the Act also imposes liability on parties who submit "claims that are [not] false on their face." *Id.* "Under some circumstances, accurate claims submitted for services actually rendered may still be considered fraudulent and give rise to . . . liability if the services were rendered in violation of other laws." *Id.*

In the Medicare and Medicaid contexts, the government conditions reimbursement on compliance with certain laws, including the Anti-Kickback Statute. *Id.* The Statute proscribes "knowingly and willfully offer[ing] or pay[ing] any remuneration . . . to any person to induce such person . . . to refer an individual to a person for the furnishing . . . of any item or service for which payment may be made whole or in part under a Federal healthcare program." 42 U.S.C. § 1320a–7b(2). A person seeking payment for Medicaid and Medicare services in violation of the

Statute is liable under the False Claims Act, 31 U.S.C. § 3729(a)(1)(A). *See United States ex rel. Colquitt v. Abbott Lab.*, 858 F.3d 365, 371 (5th Cir. 2017).

## III.    Analysis

The second amended complaint alleges that the defendants engaged in three types of unlawful conduct: illegal kickbacks to marketing agents, organizations, and physicians, (Docket Entry No. 20 at ¶¶ 5, 14, 17–18, 20–21); fraudulent claims for nonessential transportation services, (*id.* at ¶ 19); and improper employment of physician-employees and the wrongful provision of benefits to other physicians, (*id.* at ¶¶ 15, 20).   Three counts allege violations of the False Claims Act (Counts I–III), one alleges violations of the Anti-Kickback Statute (Count IV), and one alleges violations of the Texas Medicaid Fraud Prevention Act (Count V).   (Docket Entry No. 20 at ¶¶ 22–41).

Headen has materially amended only paragraphs 17 and 18, which describe the defendants' alleged kickback schemes involving Blackshear Elementary and Rhodes Charter. (*Compare* Docket Entry No. 12 at ¶¶ 16–17, *with* Docket Entry No. 20 at ¶¶ 17–18).   A review of the second amended complaint shows that Headen did not address or cure the identified deficiencies in the allegations as to the Madge Bush Living Center, HISD, the Harmony Schools, or the physicians and independent contractors.   (*Compare* Docket Entry No. 12 at ¶¶ 5, 14, 16–19, *with* Docket Entry No. 20 at ¶¶ 5, 15, 17–20.   *See* Docket Entry No. 18 at 14–19).   The court dismisses the allegations concerning these organizations and people, with prejudice and without leave to amend, because Headen has amended twice without curing the identified pleading deficiencies. *Villarreal*, 814 F.3d at 766.

Headen also reasserts Count IV, which the court had dismissed with prejudice and without leave to amend because, as Headen conceded, the Anti-Kickback Statute does not give rise to an individual cause of action. (Docket Entry No. 16 at 2, 12; Docket Entry No. 18 at 8–9).

The issue the court must decide is whether the False Claims Act allegations as to Blackshear Elementary and Rhodes Charter satisfy Rule 9(b).

### A.      Headen's Presentment Claim Under 31 U.S.C. § 3729(a)(1)(A)

Count I of the second amended complaint alleges that Abundant Life and Ford violated 31 U.S.C. § 3729(a)(1)(A) by running unlawful kickback schemes. (Docket Entry No. 20 at ¶¶ 22–28). Count I alleges that Abundant Life provided services, donations, and gifts to Blackshear Elementary and Rhodes Charter in exchange for providing services to student-patients and then submitted reimbursement claims for those services, claims conditioned on compliance with the Anti-Kickback Statute. Abundant Life argues that the second amended complaint fails to state a claim because the allegations do "not provide any particulars of a plausible scheme to induce referrals . . . or reliable indicia that false claims were actually submitted." (Docket Entry No. 22 at 4). Abundant Life argues that even if Headen pleaded the schemes with particularity, the second amended complaint "provides no links between the scheme and the submission of any false claim." (*Id.*). According to Abundant Life, the second amended complaint "fails to describe how 'the improper remuneration clearly relates to the inducement of referrals.'" (*Id.* (quoting *United States ex rel. Patel v. Catholic Health Initiatives*, 312 F. Supp. 3d 584, 599 (S.D. Tex. 2018))).

Abundant Life contends that the second amended complaint is deficient because Headen does not explain why the donations "could or would induce referrals from" the schools; whether anyone associated with the schools was aware of the illicit purpose motivating the donations; or "whether

any students were referred to Abundant Life by anyone at Blackshear Elementary [or Rhodes Charter] in exchange for the free items, or any other information leading to an inference . . . that any false claims were actually presented as a result of those referrals." (*Id.* at 5). Abundant Life argues that the complaint fails to sufficiently describe the free "skills building" and "life skills and counseling" services that Melissa Shagun, the independent contractor working on Abundant Life's behalf, allegedly provided to Blackshear Elementary students. (*Id.* at 6). Abundant Life also argues that because the second amended complaint alleges that Shagun, not anyone associated with Blackshear Elementary or Rhodes Charter, referred students to Abundant Life, the pleading fails to allege an Anti-Kickback Statute violation. (*Id.* at 6). Lastly, the second amended complaint lacks specificity, Abundant Life argues, because it does not allege which Abundant Life employee evaluated the students; whether the company treated the students after the assessments; or how Abundant Life billed Medicaid. (*Id.* at 7–8).

Headen responds that the second amended complaint alleges "sufficient details of the purported scheme[s] to submit false claims paired with reliable indicia that lead to a strong inference that false claims were actually submitted to the [g]overnment." (Docket Entry No. 30 at 2). According to Headen, the second amended complaint alleges that Ford defrauded the government by using the Purpose Project to make unlawful donations to Blackshear Elementary and Rhodes Charter. (*Id.* at 3). It was in exchange for the donations that Ford obtained "direct on campus access to students and the ability to steer the referral of students for services reimbursed by federal healthcare programs." (*Id.*). Headen argues that the second amended complaint alleges who at the schools received the donations; when the defendants made the donations; and how much the donations were worth. (*Id.*). Headen also argues that the second amended complaint alleges

examples of student referrals, the services they obtained from Abundant Life, and the bills Abundant Life submitted to Medicare as a result. (*Id.*). Headen contends that the second amended complaint alleges an Anti-Kickback Statute violation because it asserts that Ford, along with the Blackshear Elementary and Rhodes Charter principals, arranged for certain students to receive Abundant Life's services, which were then billed to Medicare. (*Id.* at 5).

Abundant Life is liable under § 3729(a)(1)(A) only if it "knowingly present[ed] a false or fraudulent claim." The second amended complaint "requires, at a minimum . . . the who, what, when, where, and how of the alleged fraud." *Colquitt*, 858 F.3d at 371 (quotation omitted). The Fifth Circuit has explained that the Anti-Kickback Statute "criminalizes the payment of any funds or benefits designed to encourage an individual to refer another party to a Medicare provider for services to be paid for by the Medicare program." *United States ex rel. Ruscher v. Omnicare, Inc.*, 663 F. App'x 368, 374 (5th Cir. 2016) (quoting *United States v. Miles*, 360 F.3d 472, 479 (5th Cir. 2004)). "The elements of the [Anti-Kickback Statute] violation must . . . be pleaded with particularity under Rule 9(b) because they are brought as a [claim under the False Claims Act]." *See United States ex rel. Nunnally v. W. Calcasieu Cameron Hosp.*, 519 F. App'x 890, 894 (5th Cir. 2013). "As a matter of pleading standards," the Fifth Circuit has "establishe[d] that [r]elators need not identify particular claims resulting from [an alleged] kickback scheme." *Parikh*, 977 F. Supp. 2d at 665 (citing *Grubbs*, 565 F.3d at 190).

The second amended complaint must plead facts showing: (1) that the defendants "made kickbacks with the intent of inducing referrals," *id.*; (2) the "particular details of [the] scheme," *Colquitt*, 858 F.3d at 372; and (3) "reliable indicia that lead to a strong inference that claims were actually submitted," *id*. To allege "particular details of [the] scheme," Headen must assert facts

linking the kickbacks to the inducement of referrals. *Id.*; *see United States ex rel. Greenfield v. Medco Health Sols., Inc.*, 880 F.3d 89, 98 (3d Cir. 2018) ("A 'link' is required . . . Greenfield must prove that at least one of Accredo's claims sought reimbursement for medical care that was provided in violation of the Anti-Kickback Statute."); *Parikh*, 977 F. Supp. 2d at 674–75 (the allegations failed to satisfy Rule 9(b) because, among other deficiencies, there were "no details concerning whom the physicians referred their patients to at [the hospital], or for what services"); *Mason v. Medline Indus., Inc.*, No. 7-C-5615, 2009 WL 1438096, at *4 (N.D. Ill. May 22, 2009) ("He does not provide any detail suggesting Medline and Mt. Sinai reached an understanding as to an illicit purpose of the donations. He does not tie a donation to any false . . . cost report. Mason simply has not established the necessary links between a fraudulent scheme and a false claim.").

In *Parikh*, the district court held that the relators' complaint stated a claim for relief under the False Claims Act based on violations of the Anti-Kickback Statute. *Parikh*, 977 F. Supp. 2d at 666–68. The complaint alleged that the defendants, a hospital, a hospital administrator, and a physician, ran "a kickback scheme in which it paid bonuses and financial incentives to physicians who referred patients for treatment at the hospital." *Id.* at 659. According to the complaint, emergency room physicians, "including twelve doctors identified by name, received illegal bonuses for referring . . . patients to the hospital's Chest Pain Center." *Id.* at 666. The complaint alleged that the defendants ran the scheme because the Chest Pain Center's patient tests generated significant revenue. *Id.* In all, the emergency room physicians received $647,000 in illegal bonuses from September 2008 to March 2010. *Id.* at 667. The complaint—"[i]n exacting detail comprising eleven pages"—included "28 examples of specific Medicare or Medicaid patients that the [emergency room] physicians referred for treatment at the Chest Pain Center." *Id.* The district court held that

these "meticulous allegations" linking the payments to referrals "more than satisfied" Rule 9(b). *Id.*

But the court dismissed claims under the False Claims Act against other physicians, hospitalists, who also allegedly violated the Anti-Kickback Statute. *Id.* at 671. The court found that the allegation that "the hospitalists and their . . . assistants illegally refer the [relators'] patients to [the hospital] in exchange for employment benefits and a salary" did not "provide specific details explaining how the hospitalists [were] engaged in a [kickback] scheme." *Id.* at 671.

Similarly, in *Colquitt*, a relator sued a medical-device manufacturer for violating the False Claims Act and the Anti-Kickback Statute by paying medical providers to use a certain medical device, "for which the providers billed Medicare." *Colquitt*, 858 F.3d at 370. The Fifth Circuit held that the complaint failed to satisfy Rule 9(b) because it did not "allege the details of the [kickback] scheme with particularity." *Id.* at 372. The court reasoned that the complaint "devote[d] a single, vague paragraph to the alleged kickback scheme" and did not allege facts showing "that the unidentified doctors who received the ill-defined benefits caused the hospital to use" the device. *Id.* In other words, "the complaint never link[ed] the alleged carrots to the purchase and use of the [device] at either of the hospitals." *Id.*

The same is true here. While the second amended complaint alleges more facts about the scheme than the *Colquitt* pleading, it does not "allege the details of the scheme with particularity." *Id.* The second amended complaint alleges that Ford, through the Purpose Project, gave $7,200 in free items to Blackshear Elementary's principal. (Docket Entry No. 20 at ¶ 17). According to the second amended complaint, Ford used "inroads and subsequent on-site campus access to direct" an Abundant Life independent contractor, Melissa Shagun, "to provide free skills building services . . .

during school hours to students at Blackshear" Elementary.  (*Id.*).  Ford directed Shagun "to refer Abundant Life several of these Medicaid patients for mental health services."  (*Id.*).  Like the pleading in *Colquitt*, the second amended complaint does not allege that the Blackshear Elementary principal, the person who received the donations, caused the school to refer students to Abundant Life.  The second amended complaint fails to connect the donations to Ford's alleged "inroads" or Shagun's "free skills building services."  Indeed, the second amended complaint does not allege that the principal or anyone else at the school ever referred a student to Abundant Life.  The second amended complaint fails to satisfy Rule 9(b) because it "never links the alleged carrots to the" alleged referral of students to Abundant Life.[1]  *Colquitt*, 858 F.3d at 372.

Headen argues that because the Anti-Kickback Statute prohibits offering remuneration  "to any person to induce such person to refer an individual to a person for the . . . arranging for the furnishing of any . . . service for which payment may be made . . . under a Federal health care program," the second amended complaint alleges an Anti-Kickback violation.  42. U.S.C. § 1320-7b(b)(2)(A); (Docket Entry No. 30 at 5).  Headen asserts in his response to Abundant Life's motion to dismiss that the pleading "clearly allege[s] that Ford along with the Principal[] arranged for the utilization of Abundant Life's services based on the gifts and free services." (Docket Entry No. 30 at 5).

---

[1] At oral argument, Headen's counsel conceded that the second amended complaint does not allege that a school principal referred a student to Abundant Life.  (Docket Entry No. 38).  Headen's counsel confirmed that there was no link between Ford's donations and a student referral, instead arguing that Ford's donations and the subsequent increase in referrals demonstrated that Ford ran a kickback scheme in violation of the Anti-Kickback Statute.  (*Id.*).  Headen conflates the Anti-Kickback Statute, which imposes criminal penalties on those who offer gifts with the intent to induce referrals, with the False Claims Act and Rule 9(b), which require relators to plead "details of the scheme" with particularity, including a connection between remuneration and referrals.  *Colquitt*, 858 F.3d at 372; 42. U.S.C. § 1320-7b(b)(2)(A).

Even assuming that Ford directed Eryca Neville, the Purpose Project employee, to make the donations to Blackshear Elementary's principal, the second amended complaint fails to allege that the principal did anything except receive the free items. (*See* Docket Entry No. 20 at ¶ 17). It does not allege that the donations induced the principal or another Blackshear Elementary official to refer students to Abundant Life in order to receive services that were billed to Medicaid, or to invite Shagun to give students "free skills building services" that were billed to Medicaid. (*Id.*).

The second amended complaint also fails to explain "how and why [Ford] believed that remuneration would induce new business." *Ruscher*, 2014 WL 2618158, at *10. According to the second amended complaint, "the arrangement"—presumably the donations to Blackshear Elementary and the provision of "free skills building" services—"was mutually beneficial," because the school used the donated items and free services "to supplement[] its understaffed and underfunded departments." (Docket Entry No. 20 at ¶ 17). There is no particularized allegations as to why Ford thought the donations and services would induce Blackshear Elementary officials to refer students to Abundant Life, as required by Rule 9(b). *See Ruscher*, 2014 WL 2618158, at *10; *see also Nunnally*, 519 F. App'x at 894. Nor does the second amended complaint provide specifics about the educational materials Ford donated or the "free skills building services." *See Colquitt*, 858 F.3d at 372 (a complaint alleging a False Claims Act violation predicated on an Anti-Kickback Statute violation lacked particularity because "[n]o specifics about the discounts and rebates are provided").

The second amended complaint fails to allege "particular details of a [kickback] scheme," as Rule 9(b) requires. *Grubbs*, 565 F.3d at 190. The presentment claim as to Blackshear Elementary

is dismissed, with prejudice and without leave to amend, because Headen has amended twice without curing the pleading deficiencies. *Villarreal*, 814 F.3d at 766.

The presentment claim as to Rhodes Charter fails for similar reasons. The second amended complaint alleges that Abundant Life received referrals from Rhodes Charter after Ford, through the Purpose Project, donated $20,000 in computers to the school principal in October 2017. (Docket Entry No. 20 at ¶ 18). The second amended complaint also alleges that Shagun provided Rhodes Charter with "free skills building services," and that Abundant Life gave some student-patients "initial assessments" for which the company billed Medicaid. (*Id.*). But, as with the allegations as to Blackshear Elementary, the second amended complaint does not allege that the donation or Shagun's services induced Rhodes Charter to refer students to Abundant Life. *See Colquitt*, 858 F.3d at 372. It also fails to allege how the alleged donation or "free skills building services" induced the Rhodes Charter principal or other school officials to refer students to Abundant Life for services billed to Medicaid. *See Ruscher*, 2014 WL 2618158, at *10. In short, the second amended complaint does not plead facts that could support an inference that the computers provided were part of a kickback scheme. Nor does it allege "reliable indicia that lead to a strong inference that claims were actually submitted." *Colquitt*, 858 F.3d at 372.

The court dismisses the allegations as to Rhodes Charter Elementary, with prejudice and without leave to amend, because Headen has amended twice without curing the pleading deficiencies.

Count I fails to state a plausible claim for relief under § 3729(a)(1)(A).[2] The claim is dismissed, with prejudice and without leave to amend. *Villarreal*, 814 F.3d at 766.

## B. Headen's False-Record and Conspiracy Claims Under § 3729(a)(1)(B)–©

The second amended complaint alleges in Count II that the defendants are liable under 31 U.S.C. § 3729(a)(1)(B) for making false records or statements. (Docket Entry No. 20 at ¶¶ 29–33). Headen argues that the second amended complaint "has indicated that each billing submission to Medicaid constituted a false record based on false certification regarding compliance with the [Anti-Kickback Statute]." (Docket Entry No. 30 at 6).

Liability attaches under § 3729(a)(1)(B) if a party "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." Section 3729(a)(1)(B) requires that "the defendant made a false record or statement for the purpose of getting a false or fraudulent claim paid by the Government." *Grubbs*, 565 F.3d at 192. "A relator alleging a § 3729(a)[(1)(B)] violation must still show the who, what, when, where, and how of the alleged fraud under Rule 9(b)." *United States ex rel. Rafizadeh v. Cont'l Common, Inc.*, 553 F.3d 869, 874 (5th Cir. 2008) (quotation omitted).

The second amended complaint fails to cure the deficiencies identified in the previous pleading. (Docket Entry No. 18 at 21–23). Headen clarifies that his false-records claim under § 3729(a)(1)(B) is predicated on violations of the Anti-Kickback Statute, which lacks the particularity required by Rule 9(b). While the second amended complaint alleges that some services were billed to Medicaid, (*see* Docket Entry No. 20 at ¶¶ 17–18), it fails to allege facts that could

---

[2] Because Count I is premised on violations of the Anti-Kickback Statute and alleges no separate basis for fraudulent conduct, the second amended complaint does not allege a direct claim under § 3729(a)(1)(A). (*See* Docket Entry No. 30 at 19–21).

support a plausible inference that Ford or Abundant Life submitted false records. Headen points to no allegations of specific instances of fraud, and the second amended complaint does not sufficiently allege that Abundant Life made a false record or statement. *See Nunnally*, 519. F. App'x at 895.

Count II fails to satisfy Rule 9(b). The claim is dismissed, with prejudice and without leave to amend, because Headen has amended twice without curing the pleading deficiencies. (*See* Docket Entry No. 18 at 21–23). *Villarreal*, 814 F.3d at 766.

The second amended complaint alleges that the defendants violated the False Claims Act's conspiracy provision. (Docket Entry No. 20 ¶¶ 34–37). Section 3729(a)(1)© imposes liability on a person who "conspires to commit [violations]" of the Act, including the proscriptions against submitting false claims and making false statements. To state a claim under § 3729(a)(1)(B), "a relator must show '(1) the existence of an unlawful agreement between defendants to get a false or fraudulent claim allowed or paid by [the government] and (2) at least one act performed in furtherance of that agreement." *Grubbs*, 565 F.3d at 193 (quoting *United States ex rel. Farmer v. City of Hous.*, 523 F.3d 333, 343 (5th Cir. 2008)).

Headen argues that the second amended complaint alleges that the defendants conspired to violate the False Claims Act because the pleading describes "how Ford masterminded the kickback offers"; "a quid pro quo arrangement between area principals"; and "the benefits of such arrangements[,] including the supplementation of understaffed schools." (Docket Entry No. 30 at 6). Abundant Life contends that the second amended complaint fails to allege facts supporting an inference that there was an unlawful agreement. (Docket Entry No. 22 at 9).

The second amended complaint alleges some facts about Ford's state of mind, and that Ford, through the Purpose Project, made donations to certain schools. But the second amended complaint

details only actions by Ford, not an agreement with another person or entity, as § 3729(a)(1)(B) requires. The second amended complaint's conspiracy allegations also "fail on the independent ground that [it] cannot plead a conspiracy to commit [a False Claims Act] violation without successfully alleging [a False Claims Act] violation." *Health Choice Grp., LLC v. Bayer Corp.*, No. 5:17-CV-126-RWS-CMC, 2018 WL 3637381, at *53 n. 18 (E.D. Tex. June 29, 2018).

The second amended complaint fails to allege a conspiracy to violate the False Claims Act. Count III is dismissed, with prejudice and without leave to amend, because Headen has amended twice without curing the pleading deficiencies. *Villarreal*, 814 F.3d at 766.

## C. Headen's Claims Under Texas Law

In Count V, Headen alleges that the defendants violated the Texas Medicaid Fraud Prevention Act, TEX. HUM. RES. CODE § 36.002. (Docket Entry No. 20 at 16–17). Generally, when all federal claims have been dismissed at an early stage, a district court should dismiss any pendent state-law claims, without prejudice. *See Parker & Parsley Petro. Co. v. Dresser Indus.*, 972 F.2d 580, 585 (5th Cir. 1992). The court declines to exercise supplemental jurisdiction over Headen's claim under the Texas Medicaid Fraud Prevention Act. Count V is dismissed, without prejudice, so that he may refile it in state court.[3]

## IV. Conclusion

_____

[3] The court's November 30, 2018, Memorandum and Opinion, relying on *United States ex rel. Williams v. McKesson Corp.*, No. 3:12-CV-371-B, 2014 WL 3353247, at *4 (N.D. Tex. July 9, 2014), explained that if "a relator's complaint fails to state a claim under the False Claims Act, it also fails to state a claim under the Texas Medicaid Fraud Prevention Act." (Docket Entry No. 18 at 27). The State of Texas filed a statement of interest in response to Abundant Life's motion to dismiss, arguing that the federal and Texas laws "differ[] substantially." (Docket Entry No. 23 at 3). Because Count V is dismissed, the court does not reach the issue. To the extent that the November 2018 Memorandum and Opinion construed the Texas Act, this Memorandum and Opinion supersedes it.

The defendants' motions to dismiss are granted.  (Docket Entry No. 22, 27).  Counts I, II, III, and IV are dismissed, with prejudice and without leave to amend.  Count V is dismissed, without prejudice.  An order of dismissal is separately entered.

SIGNED on April 30, 2019, at Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge